[No. 1327.]

## THE STATE OF NEVADA, Respondent, v. THE DIAMOND VALLEY LIVE STOCK AND LAND COMPANY et als., Appellants.

Assessment For Taxes—Name of Owner.—A slight error in the name of the taxpayer made by the assessor, when the property is correctly described and the owner is not misled by the name, will not avoid the owner's liability for the taxes provided he can be identified by competent testimony.

Idem—Duty of Taxpayer—It is the duty of a taxpayer to call the attention of the assessor to any error or mistake appearing upon the face of the statement, which he observes, and if he fails to do so, he will not be permitted to take advantage of his own wrong.

Idem—Excessive Valuation—If a taxpayer, or his agent, fails or refuses to swear to the statement made by the assessor of his taxable property, or to give to the assessor his list of taxable property under oath, the board of equalization is prohibited by law from reducing the assessor's valuation and the taxpayer cannot question such valuation in a court of law.

Interest on Judgments—Statute Construed—Section 4903 of the general statutes means that interest shall be allowed at the legal rate on all moneys after they become due on any judgment recovered before any court in this state.

APPEAL from the District Court of the State of Nevada, Eureka county.

, A. L. Fitzgerald, District Judge.

Rives & Beatty and J. R. Judge, for Appellants.

I. There was no valid assessment of the taxes here sued for by the assessor of Eureka county, for the year 1888. The Diamond Valley Live Stock and Land Company, or its property, can not be bound by the assessment in the name of the Diamond Valley Stock Company. An assessment must be made in order to create a liability on the part of the individual to pay the tax, and no person is a taxpayer until he has been so declared by the proper officer. The assessment must be as certain in designating the person chargeable with the tax at the commencement of of the fiscal year, as it must be in designating the amount of the charge, and the property to which reference is made for the purpose of ascertaining such amount. (Kelsey v. Abbott, 13 Cal. 609; Moss v. Shear, 25 Cal. 38; People v. Sneath and Arnold, 28 Cal. 615; Sharp v. Speir, 4 Hill, N. Y. 89; Blackwell on Tax Titles, 173, 4; Crawford v. Schmidt, 47 Cal. 617; Grimm v. O'Connell, 54 Cal. 522; Hearst v. Eggleston, 55 Cal. 366; Brady v. Dowden, 59 Cal. 51; Pearson v. Creed, 78 Cal. 144.)

II. The assessment made in the name of the Diamond Valley Stock Company was the deliberate and arbitrary act of the assessor, and this being the case, respondent is bound by the acts of its authorized agent, and this agent having acted by assessing the property of appellant to a corporation having no interest in the property so far as the record in this case shows, and having no interest in, or claim to the property assessed to it, such assessment is absolutely void and can not in any manner bind appellant or its property. (Kelsey v. Abbott, 13 Cal. 609; Smith v. Board of Supervisors, 30 Iowa 536; Blatner v. Davis, 32 Cal. 328; People v. Whipple, 47 Cal. 591; Crawford v. Schmidt, 47 Cal. 618.)

III. Whenever an attempt is made to charge or divest the estate of a citizen by statutory modes, the proceedings required to be followed in that respect must be strictly pursued, and any failure to do so makes the proceedings null. (Sedgwick on Stat. 319; Bensly v. Mountain L. W. Co., 13 Cal. 306; Curran v.

*Shattuck*, 24 Cal. 427; *Stanford* v. *Worn*, 27 Cal. 171; *Smith* v. *Davis*, 30 Cal. 537.)

IV.   In assessing property, the name of the owner thereof should be ascertained and set forth with equal certainty and correctness as the name of a grantee in a deed. (*Hearst* v. *Eggleston*, 55 Cal. 365.)

V.   In general the assessment must be certain in designating the person chargeable, the amount of the charge, and the property upon which the assessment is made in order to create a liability against either the owner of the property or the property itself to pay the taxes. (*Green* v. *Craft*, 28 Miss. 70; *Rayner* v. *Lee*, 20 Mich. 384; *Thompson* v. *Davidson*, 15 Minn. 412; *Coulson* v. *Harris*, 43 Miss 728; *Cruger* v. *Dougherty*, 43 N. Y. 107; *People* v. *Freeman*, 3 Lansing 148; *Westfall* v. *Gere*, 3 Lansing 151; *Clarke* v. *Norton*, 3 Lansing 484; *Bechdle* v. *Lingle*, 66 Pa. 38; *Newman* v. *Wait*, 43 Ver 587; *Wauwatosa* v. *Gunyon*, 25 Wis. 271; *Thompson* v. *Tinkcon*, 15 Minn. 295; *Zanesville* v. *Muskingum*, 5 Ohio N. S. 589.)

VI.   Appellant was entitled to prove, and its offer to prove that an excessive valuation was placed upon the property described in the complaint by the assessor should have been allowed by the trial court, and by it considered. (*People* v. *Nelson*, 36 Cal. 377.)

VII.   The judgment allowing interest from its date upon the sum allowed and found, as the additional penalty of twenty-five per centum, as well as the allowance of interest upon the sum found due as delinquency of ten per cent. is erroneous.

*The Attorney General, Peter Breen*, District Attorney of Eureka county, and *A. E. Cheney*, for Respondent.

I.   It was the duty of defendant to furnish a statement of its taxable property in its true name, and it ought not to be permitted to avail itself of an error which would have been avoided if the defendant had performed its duty and given a correct statement, or called the attention of the assessor to the error in the name, as written on the statement presented to its agent.

II.   The evidence clearly shows that the property was intended to be assessed to its true owner, and that the defendant was generally known by the name by which it was assessed. The identity of the true owner and the person to whom it was

assessed was clearly established. This is sufficient to bind the owner. (*People* v. *Sierre Buttes et al.*, 39 Cal. 511; *Lake County* v. *S. B. Q. M. Co.*, 66 Cal. 17.)

III. The mistake having been caused by the neglect of the defendant to furnish a proper statement, or correct the one made, the failure to allege the mistake would have been cured by an amendment, which the court had full power to grant at any time, without terms, as there could be no claim of surprise at the variance between the pleading and proof. (Bliss on Code Plead. Sec. 427; Angell & Ames on Corp Sec. 651.)

IV. The mistake in the name of a corporation, by adding or omitting words, is not fatal if there be enough to distinguish the corporation, and the mistake may be either averred in the pleading or shown in evidence under the general issue (*Culpeper A. & M. S.* v. *Digges*, 18 Am. Dec. 708.)

V. In this state tax proceedings are not strictly construed, and the test of a valid defense is: Has the defendant paid his tax or been injured by the acts of which he complains. (*State* v. *W. U. Tel. Co.*, 4 Nev. 347; *State* v. *C. P. R. R. Co.*, 10 Nev. 47, 60; *State* v. *Mining Co.*, 15 Nev. 386; *State* v. *Sadler*, 23 Pac. Rep. 800.)

VI. Every judgment should draw legal interest for the full amount which the party is entitled to recover (except interest and costs) from the date of its rendition. If the interest on the penalties is not properly allowable, the court can order the judgment modified, or disregard the point under the maxim: *De minimis non curat lex.* (*Wilson* v. *McEvoy*, 25 Cal. 174; *McConihe* v. *N. Y. & E. R. Co.*, 20 N. Y. 495.)


By the Court, MURPHY, J.:

This is a suit against the above-named defendant and certain real estate and improvements, described in the complaint, to recover state and county taxes, assessed against the corporation in Eureka county for the year 1888, and to enforce against the property the lien created by law. The plaintiff had judgment against the corporation, which appealed, and seeks a reversal of the judgment upon two grounds.

The first defense set up is, that there was no valid assessment of the property described in the complaint made against the defendant, " The Diamond Valley Live Stock & Land Com-

pany," but that the same was made and the property assessed against the "Diamond Valley Stock Company, R. Sadler, agent," and that the true name of the corporation is "The Diamond Valley Live Stock & Land Company."

The question to be determined from the facts in this case is whether the defendant should be required to pay the taxes, notwithstanding the mistake in the name of the corporation, or whether the corporation was injured thereby, and the omitting of the words "live" and "land" from the name of the company is such an error as vitiates the assessment as made by the assessor, and relieves the corporation from the payment of its just proportion of taxes to the support of the state and county governments for the year 1888. While on the one hand, it is important to the security of the taxpayer that as much regularity and uniformity as is practicable should be maintained in the naming of the owners of property, and the listing of the same for the purpose of taxation; it is also important that, as far as practicable, all persons and corporations liable to taxation should pay their or its just proportion of the public taxes, and not be permitted to escape by means of slight mistakes or frivolous objections. We think this is the plain intent of the law. Section 1080, Gen. Stat. reads: "All property of every kind and nature whatsoever within this state, shall be subject to taxation, except." And the property of the defendant does not fall within the excepted class. Section 1082 reads: "Between the first Monday in March and the first Monday in September in each year, the county assessor * * * shall ascertain, by diligent inquiry and examination, all property in his county, real or personal, subject to taxation, and also the names of all persons, corporations, associations, companies, or firms owning the same; * * * he shall then list and assess the same to the person, firm, corporation, etc. He shall also demand from each person and firm, and from the president, cashier, treasurer, or managing agent of each corporation, * * * a statement, under oath or affirmation, of all property within his county owned or claimed by him, it or them. If any person, officer or agent, shall refuse to furnish such list, or shall give a false name, or shall refuse to give his or her name, or shall refuse to swear or affirm, he or she shall be guilty of a misdemeanor. If the owner of the property shall fail or refuse to make out and swear to the statement as required by the stat-

ute, the assessor shall make an estimate of the value of such property and assess the same. * * * If the name of the owner be known, the property shall be assessed in his or her name. If unknown to the assessor, the property shall be assessed to unknown owners."

From the foregoing, we are of the opinion that a slight error in the name of the person or corporation taxed, when the property is correctly described, and the owners are not misled by such name or description, the tax assessed to him or it may, notwithstanding such error, be collected of the person or corporation intended to be taxed, provided the person or corporation can be identified by competent evidence. In this case the omission of a part of the name of the defendant was the fault of the vice president and managing agent of the corporation.

On the trial in the district court, C. C. Wallace, assessor of Eureka county, testified: "The Diamond valley property, as I had always understood, belonged to Sadler before it was sold to the company. I got my idea of the name of the company in 1888, of Sadler. He and I sat down together. When we got through, he refused to sign the statement, and went away. I had understood always that the name was 'Diamond Valley Stock Company.' The dispute between Sadler and me was on the value of the land. I had never heard that this was the property of any other than the Diamond Valley Stock Company, and never heard that it was the property of the Diamond Valley Live Stock & Land Company, nor did I inquire until after this action was commenced. Nine out of every ten persons that one would hear speak about the property would speak of it as the property of the Diamond Valley Stock Company. I never heard it called any other name. The company was commonly and generally known as the 'Diamond Valley Stock Company.' I asked Sadler to come into my office and fix up the statement of his property for 1888, including the property of this company. We sat down to my desk together with the statement partially prepared before us. The name 'Diamond Valley Stock Company' had been written in the statement in two places before he came in—once near the top of the sheet, and the other near the middle of it. In each place the name is written in large, plain letters, much larger than the rest of the writing, and the name is so conspicuous that I do not see how it was possible that Sadler could help seeing it. We discussed

the amount of personal property of the company, and I wrote it in the statement. We agreed as to the value of the personal property, but not as to the value of some of the real estate. Mr. Sadler refused to sign the statement, and the company never furnished me with any other statement of their taxable property for that year." Defendant admitted that the statutory notice of the commencement of the action had been published as required by law. It was also admitted that the summons had been served upon the defendant corporation and upon the real estate described in the complaint. Defendant called R. Sadler as a witness on its behalf, who testified, "that he was the agent and vice president of the Diamond Valley Live Stock & Land Company, named as defendants in this action, and so was during all of the fiscal year 1888. Knew Wallace as assessor of Eureka county for a number of years. In June, July, or August, 1888, Wallace made Exhibit A, and showed it to me: all the real estate made out as it is now; valuation set down. He consulted me only as to the personal property. I never told him the name, or talked to him at all about the name, of the corporation owning the property named in the complaint, and sued in this action, in 1888. I went before the board of equalization in 1888 concerning this and other assessments against myself and companies, but the board refused to act on my protests. I know that the personal property, and the description of the real estate, were written in the statement before it was shown to me, because I saw it at the time the statement was before Mr. Wallace and myself at his office." At this point the witness was asked the following question: "If you then saw that the description of the personal property and real estate written in the statement, how is it that you did not also see the name 'Diamond Valley Stock Company,' which was twice written in large letters on the same sheet as that which you said you did see written there? Answer. I did not say that I did not see the name. That was his lookout, and not mine. I did not go there to correct the assessor's mistakes. I represented to the board that this assessment was too high. I signed no statement or assessment of any property in which I was interested for the year 1888, because Mr. Wallace had assessed it all too high." It was admitted that all the property described in the complaint was owned by, and in the possession of, the corporation defendant herein,

under recorded deeds. Here we have a corporation defendant, which, by its vice president and managing agent, appeared before the assessor to give in the name, list, and statement of his company's assessable property. He sees that there is a mistake in the name of the corporation as written by the assessor, and he fails to correct the same, and upon the trial he says: "I did not go there to correct the mistakes of the assessor." That is just what he did go there for, and it was his duty to have called the attention of the assessor to any error or mistake that might have appeared upon the face of the statement. He not having done so, he will not now be permitted to take advantage of his own wrong. For it is not to be overlooked that such errors will, in most cases, arise from the default of the taxpayer himself, who fails to perform the duty required of him by law, of giving in his name and list of property to the assessor.

The second error assigned by the appellant is, the refusal of the court to permit the defendant to show that an excessive valuation was placed upon the property by the assessor. An answer to that objection is that the agent of the defendant failed and refused to swear to the statement as made by the assessor, and made no statement of his own listing the company's property for the year 1888. Section 1091, Gen. Stat. Nev., reads: "Where the person complaining of the assessment has refused to give the assessor his list under oath, as required by this act, no reduction shall be made by the board of equalization in the assessment made by the assessor." And the same rule will be enforced in a court of law, and the answer does not raise the issue. (See *State* v. *Sadler*, 21 Nev. 1?.)

Section 1112, Gen. Stat., makes the civil practice act applicable in tax-suits. Section 4903 means that interest shall be allowed at the legal rate on all moneys after they become due, on any judgment recovered before any court in this state. (*Himmelman* v. *Oliver*, 34 Cal. 247.) The judgment of the district court is affirmed.