### ALLEN *v.* CITY OF PORTLAND.

[58 Pac. 509].

1. MUNICIPALITIES—STATUTORY CONSTRUCTION—ASSESSMENTS.—Statutes under which property may be taken or incumbered for public improvements or taxes without the consent of the owners, must be strictly construed, and every substantial requirement must be complied with to sustain the proceedings.

2. JURISDICTION OF COUNCIL—COLLATERAL ATTACK.—A city council, in determining the sufficiency of a petition for a public improvement, exercises a *quasi* judicial function, but the question of its jurisdiction in a given case is always open to inquiry. Thus, under a city charter which provided that certain improvements should not be made unless the owners of half the property affected should petition therefor, the decision of the council that the petition was signed by half of such owners does not give it jurisdiction unless the petition was in fact so signed.

3. SUFFICIENCY OF PETITION FOR PUBLIC IMPROVEMENTS.—Under a city charter which provides that no public improvement shall be made until the owners of one-half of the property to be affected petition therefor, a petition which asks for the paving of a street within certain limits, and recites that the undersigned are owners of one-half the property abutting on the proposed improvement, followed by the signatures of the petitioners, opposite which is a

description of the property owned by them respectively, is sufficient on its face to give the council jurisdiction, where it could conveniently determine whether one-half the property to be affected was represented by the petition.

4. BURDEN OF PROOF TO SHOW JURISDICTION OF COUNCIL.—Where a city council is prohibited from making any public improvement which will entail an assessment on the abutting property owners unless such improvement is petitioned for by the owners of one-half the property to be affected thereby, and it appears from the record that such number have petitioned, and the council have so determined, the burden of showing that the council did not have jurisdiction rests on one who seeks to have the assessment declared void and removed as a cloud on his title.

5. PUBLIC IMPROVEMENTS—AGENT'S AUTHORITY TO SIGN PETITION.—Where a petition for a public improvement shows on its face that the names of property owners affixed thereto were signed by agents, the authority of such agents will be presumed, and need not appear thereon, but may be proven by evidence *dehors* the record ; and, if the council is satisfied that the agency exists, it may act, and its determination is *prima facie* evidence of the fact.

6. PETITION FOR STREET IMPROVEMENT—SIGNATURE OF CORPORATION.—A signature to a petition for a street improvement in the name of a corporation by a given person is sufficient to bind the property signed for, though the title is held in trust for the corporation by two of the directors.

7. IDEM.—To set aside an assessment on the ground that the improvement for which it was levied was not petitioned for by the owners of one-half the property affected, it appeared that the name of a corporation was signed by its secretary ; that no resolution of the board of directors was passed authorizing the signing in its name, but that the secretary was the manager of the corporation, and transacted its entire business, except such as arose outside of the usual course thereof ; that there were but three directors ; that he consulted with another member of the board in regard to signing the petition, and they agreed it was desirable, and pursuant thereto the secretary signed. *Held*, that the signing by the secretary was sufficient to bind the property, and it must be counted for the improvement on a question whether the owners of half the property affected had signed the petition.

8. IDEM—NECESSITY FOR CORPORATE SEAL.—A seal is not necessary to the validity of the signature of a corporation to a petition for a street improvement, unless there is a requirement that all petitioners shall sign under seal.

9. PETITION—SIGNATURE BY OWNER OF LIFE ESTATE.—One who has a life estate in an undivided half of a lot, and has the care and management of the other half during a child's minority, is the "owner" of the entire lot in the sense that she can sign for it in petitioning for a street improvement.

10. SUFFICIENCY OF SIGNATURE—DESCRIPTIO PERSONÆ.—A signature with the additional words, "Adm'x Estate of C. F. Crowell," is the personal signature of the signer, the added words being merely descriptive.

11. SIGNATURE OF CHURCH CORPORATION.—The signing of a petition for a street improvement as "Wardens and Vestry of Trinity Parish, by James Laidlaw, Clerk," is a sufficient signing of the name of a corporation whose true name is "Rector, Wardens and Vestrymen of Trinity Parish, Portland," where it appears that the clerk was duly authorized by resolution to sign the petition.

12. SIGNATURE BY OWNER OF CONTROLLING INTEREST IN LOT.—The signing of a petition for a street improvement by the owners of an undivided two-thirds of a lot is sufficient to warrant the counting of such lot in estimating the aggregate of property petitioning for the improvement.

13. CONSTRUCTION OF PAVING CONTRACT.—A paving contract providing that the pavement "shall be guaranteed for five years from the date when it is opened to traffic, and during said period all defects in the pavement due to its proper use as a roadway shall be repaired and made good by the contractor at his own expense," is only a guaranty of the faithful compliance with the contract, and not an agreement to maintain the pavement in repair for five years:* *Portland* v. *Bituminous Paving Co.,* 33 Or. 307, distinguished. For the payment of such a contract the city may, under its charter, levy an assessment on the property benefited: (Laws, 1891, p. 823.)

14. APPEAL—FEDERAL QUESTION.—A state supreme court will not pass on an assignment of error which involves a question under the federal constitution, where such question is raised for the first time in the supreme court, unless by fair inference and intendment it may be said to exist in the record as made by the parties in the trial court.

From Multnomah : ALFRED F. SEARS JR., Judge.

This is a suit by Andrew Allen and others to restrain the City of Portland and its Chief of Police from selling certain real property for the payment of the assessments for the improvement of Sixth Street in said city. The objections raised to the validity of the respective assessments are set forth in the second paragraph of the opinion. The cause being at issue, was referred to John B. Cleland, Esq., who reported findings of fact and conclusions of law, which were affirmed by the trial judge, whereupon plaintiffs appealed.        AFFIRMED.

For appellants there was an oral argument by *Messrs. Edward B. Watson, Fred. L. Keenan* and *Julius C. Moreland,* with a brief over the names of *Watson & Beekman, F. L. Keenan, J. C. Moreland* and *Andrew T. Lewis,* to this effect :

The requirements of section 95 of the Portland charter of 1891, that "the owners of half of the property affected shall petition for the same" before any step is taken by the common council, is a condition precedent, and must

---

*NOTE.—For a collection of cases on this subject see Subd. III of a note, Power of City to Bind Contractor to Repair Pavement which he has laid : 44 L. R. A. 527, 533, 72 Am. St. Rep. 713, 723.

be complied with before jurisdiction attaches :    2 Wharton, Ev. § 1310 ;    Strout v. City of Portland, 26 Or. 294 (38 Pac. 126) ;    Miller v. City of Amsterdam, 149 N. Y. 293–297 (43 N. E. 632) ;    Von Stein v. City of Beatrice, 36 Neb. 428 (54 N. W. 677, 680) ;    Watkins v. Griffith, 59 Ark. 355, 358 ;    Clark v. Wordell, 55 Me. 61.

The petition must be in writing :    2 Bouvier, Law Dic. 411 ;    State v. Dodge County, 20 Neb. 595 (31 N. W. 117, 119–129) ;    Moser v. White. 29 Mich. 59 ;    Williams v. Mears, 61 Mich. 86 (27 N. W. 863, 864).

The petition must show jurisdiction on its face :    Grignon's Lessees v. Astor, 43· U. S. (2 How.) 338 ;    Holmes v. Oregon & Cal. R. R. Co., 7 Sawy. 380, 385–391 ;    Haynes v. Meek, 20 Cal. 312 ;    Felch v. Meller, 20 Cal. 381 ;    People v. Highway Com'rs, 14 Mich. 528 ;    Duport v. Com'rs. 28 Mich. 362 ;    Bennett v. Drainage Com'rs, 56 Mich. 634 (23 N. W. 441) ;    Wright v. Edwards, 10 Or. 298, 302–307.

The common council is not a court, and has no judicial power to decide upon its own jurisdiction :    Bewley v. Graves, 17 Or. 274, 283 (20 Pac. 322) ;    Sharp v. Speer, 4 Hill. 177 ;    Matter of Second Ave. M. E. Church, 66 N. Y. 395 ;    Miller v. City of Amsterdam, 149 N. Y. 293 (43 N. E. 632–635) ;    Thorn v. West, 150 Ill. 111 (22 N. E. 520).

The burden of proof is on the city to show that the council had jurisdiction before proceeding with this improvement :    1 Wharton, Ev. § 357 ;    2 Wharton, Ev. §§ 1284, 1308, 1310 ;    Matter of Second Ave. M. E. Church, 66 N. Y. 395 ;    Miller v. City of Amsterdam, 149 N. Y. 293 (43 N. E. 632–635) ;    Oshkosh City Ry. Co. v. Winnebago County, 89 Wis. 435 (61 N. W. 1107–1108);    Brown v. School Dist., 1 Kan. App. 530 (40 Pac. 826); Scott v. People, 89 Ill. 198 ;    Thorn v. West, 130 Ill. 111 (22 N. E. 520); Dale v. Sacramento County, 50 Cal. 242 ;    Kahn v. Supervisors, 79 Cal. 388 ;    Demartini v. San Francisco, 107 Cal. 462 (40 Pac. 496) ;    Rector v. Board, 5 Ark. 128.

Agency must be proved, and the addition of such words as "agent" or "attorney in fact" are mere declarations by the parties who assume to act, and are not evidence of the actual facts as against either of the alleged principals or third parties: 2 Wharton, Ev. § 1183 ; *McNulty* v. *Hurd,* 86 N. Y. 547, 552 ; *Territory* v. *Klee,* 1 Wash. 183, 187 ; *Denn* v. *Reidt,* 35 U. S. (10 Pet.) 524, 530 ; *Videau* v. *Griffin,* 21 Cal. 389 ; *Hoyer* v. *Spect,* 52 Cal. 579.

Neither the president nor secretary of a private corporation has any authority, by virtue of his office, to sign a petition which operates to charge or incumber the real property of the corporation, and may result in divesting its title thereto : 1 Morawetz, Priv. Cor. § 537 ; *Wollworth County Bank* v. *Farmers' Loan & Trust Co.,* 14 Wis. 325, 329 ; *Chicago, etc. Ry. Co.* v. *James,* 26 Wis. 197 (7 Am. Rep. 52) ; *Titus* v. *Cairo, etc. R. R. Co.,* 37 N. J. L. 98, 102 ; *Mulligan* v. *Smith,* 59 Cal. 206 ; *Kahn* v. *Supervisors,* 79 Cal. 388 (21 Pac. 849) ; *Rector* v. *Board,* 50 Ark. 138 ; *Luse* v. *Isthmus Transit Ry. Co.,* 6 Or. 125, 130–135 ; *Brown* v. *Farmers' Supply Co.,* 23 Or. 541, 543–545.

Such a petition does not bind the corporation unless executed under the corporate seal : *Luse* v. *Isthmus Transit Ry. Co.,* 6 Or. 125, 130–135 ; *Brown* v. *Farmers' Supply Co.,* 23 Or. 541, 543–545.

There is no presumption that the signing of such a petition was authorized by the corporation where its corporate seal is lacking : Hill's Code, § 3221 ; 1 Wharton, Ev. §§ 694, 735 ; 1 Morawetz, Priv. Cor. § 340 : 2 Morawetz, 617 ; *United States Bank* v. *Dandridge,* 25 U. S. (12 Wheat.) 93 ; *Eagle Woolen Mills* v. *Monteith,* 2 Or. 277, 279, 285 ; *Luse* v. *Isthmus Transit Ry. Co.,* 6 Or. 125, 130–135 ; *Brown* v. *Farmers' Supply Co.,* 23 Or. 541, 545 ; *In re Salem Mill Co.,* 3 Sawy. 88–93 ; *Foster* v. *Shaw,* 7

Serg. & R. 164 ;  *Milldam Foundry* v. *Hovey*, 21 Pick. 417 ; *Southern California Ass'n* v. *Bustamente*, 52 Cal. 192.

The holder of the legal title is the "owner," within the meaning of sections 95 and 110 of the city charter of 1891 :  *Tracy* v. *Reed*, 38 Fed. 67–74 ;  *Von Stein* v. *City of Beatrice*, 36 Neb. 421 (54 N. W. 677) ;  *Jarrett* v. *Vaughn*, 2 Gil. 132 ;  *Wright* v. *Bennett*, 3 Scam. 257 ; *Ruggles* v. *Nantucket*, 11 Cush. 433 ;  *Baltimore* v. *Boyd*, 64 Md. 10.

The city undertook to levy the estimated cost of anticipated future repairs to the street upon the adjacent property without having declared the necessity for such repairs, nor having declared by ordinance that the cost thereof should be assessed to the adjacent property.  The assessment is therefore void, nor have material requirements been complied with :  *Portland* v. *Bituminous Pav. Co.*, 33 Or. 307 (52 Pac. 30, 33, 44 L. R. A. 527, 72 Am. St. Rep. 713);  *Buckley* v. *Tacoma*, 9 Wash. 253–269 ;  *McAllister* v. *Tacoma*, 9 Wash. 272 ;  Charter, 1891, §§ 122, 123.

For respondents there was an oral argument by *Messrs. Joel M. Long*, City Attorney, and *Fred V. Holman*, with briefs over the names of *Wm. M. Cake*, former City Attorney, *F. V. Holman*, and *J. M. Long*, present City Attorney, to this effect :

The burden of proof is on the appellants to show the lack of jurisdiction in the city council :  Section 191, charter, 1891 ;  section 207, charter, 1893 ;  7 Enc. Law, p. 95 ;  Lewis, Em. Dom. § 347 ;  *Ewing* v. *City of St. Louis*, 72 U. S. (5 Wall.) 413 ;  *Ogden City* v. *Armstrong*, 168 U. S. 224 (18 Sup. Ct. 98);  *Bewley* v. *Graves*, 17 Or. 274 (20 Pac. 322);  *Humboldt* v. *Dinsmore*, 75 Cal. 604 (17 Pac. 710);  Elliott, Roads & Sts. 251, 252 ;  *State* v. *Supervisors*, 57 Wis. 151, 152 ;  *Snoddy* v. *County of Pettis*,

45 Mo. 361; *Kahn* v. *Board of Supervisors*, 79 Cal. 206 (21 Pac. 849); *Spaulding* v. *Homestead Ass'n*, 87 Cal. 40; 2 Dillon, Mun. Corp. (4 ed.) § 800; Cooley, Tax'n, p. 465; *Auditor-Gen.* v. *Fisher*, 84 Mich. 128 (47 N. W. 574); *Hudson* v. *City of Bayonne*, 54 N. J. L. 297; *Mc-Enery* v. *Town of Sullivan*, 125 Ind. 407; *Boyle* v. *City of Brooklyn*, 71 N. Y. 1; *Banse* v. *Town of Clark*, 69 Minn. 53 (71 N. W. 819); *Tibbitts* v. *North & South Towns St. Ry. Co.*, 54 Ill. App. 180; *Tibbetts* v. *North & South Towns St. Ry. Co.*, 153 Ill. 147 (38 N. E. 664); *North Chicago St. Ry. Co.* v. *Cheatham*, 58 Ill. App. 318; *Kirkman* v. *St. Ry. Co.*, 58 Ill. App. 515; *Streib* v. *Cox*, 111 Ind. 299; *Ely* v. *Board*, 112 Ind. 361; *Commissioners* v. *Aspinwall*, 62 U. S. (21 How.) 539; *People* v. *Hagar*, 52 Cal. 171; *People* v. *City of Rochester*, 21 Barb. 656; *Matter of Hebrew B. O. A. Society*, 70 N. Y. 476; *Matter of Mead*, 74 N. Y. 216.

The signing of the petition by Martha M. Crowell was a valid signing by her individually, as the owner of the lot, notwithstanding the words annexed to her name : *Stevenson* v. *Polk*, 71 Iowa, 278; *Miller* v. *Kingsbury*, 126 Ill. 45; *Arts* v. *Guthrie*, 75 Iowa, 674. Mrs. Vial was the "owner" of the property for which she signed, within the meaning of the charter, and the same is true with reference to the Oregonian Publishing Company : *White* v. *Mayor of Nashville*, 2 Swan (Tenn.), 364; *Holland* v. *Mayor*, 11 Md. 186; 17 Enc. Law, p. 299 *et seq.*; 1 Hilliard, Real Prop. p. 53; *Gilligan* v. *Aldermen of Providence*, 11 R. I. 258; *Shoff* v. *Improvement Co.*, 57 N. H. 115; *Davis* v. *Cincinnati*, 36 Ohio St. 24; *Land* v. *Everling*, 23 N. Y. St. 329; *City of Newark* v. *State*, 34 N. J. L. 523; *Bennett* v. *Seibert*, 10 Ind. App. 369; *Baker* v. *State Ins. Co.*, 31 Or. 41 (48 Pac. 699); *Insurance Co.* v. *Erb*, 112 Pa. St. 149.

It was not attempted to be shown that H. L. Pittock, secretary, was not authorized to sign the name of the

company. But he, as general manager of the business of the company, was empowered to sign the petition. No resolution of the board of directors was required; he signed the petition with the knowledge and acquiescence of the company, and the company ratified his act before action was had on the petition by the city council. This was a good and valid signing by the company: *Mining Co.* v. *Bank*, 104 U. S. 192; *Martin* v. *Webb*, 110 U. S. 7; *Allis* v. *Jones*, 45 Fed. 146; *Railway Companies* v. *Keokuk Bridge Co.*, 131 U. S. 371; *Indianapolis Rolling Mill* v. *St. Louis, etc. R. R. Co.*, 120 U. S. 256; *Fitzgerald Construction Co.* v. *Fitzgerald*, 137 U. S. 98; *Stokes* v. *Detrick*, 25 Atl. Rep. (Md.) 846; *Ft. Worth Pub. Co.* v. *Hitson*, 14 S. W. 843; *Sheldon Hat Blocking Co.* v. *Eickemeyer Hat Block Machine Co.*, 90 N. Y. 607; *Ragland* v. *McFall*, 137 Ill. 81; *Ford* v. *Hill*, 92 Wis. 188; *Cambell* v. *Pope*, 96 Mo. 468; *Bank* v. *Bank*, 107 Mo. 133; *Moore* v. *Mfg. Co.*, 113 Mo. 106; *Cook* v. *Tullis*, 85 U. S. (18 Wall.) 332; *Pickering* v. *Lomax*, 145 U. S. 310; Thompson, Corp. §§ 4618, 4627; *Dubuque & S. C. R. R. Co.* v. *Pierson*, 70 Fed. 303; *Los Angeles Lighting Co.* v. *City of Los Angeles*, 106 Cal. 156 (39 Pac. 535).

The provision of the contract as to keeping the pavement in repair, is but a guaranty of the quality of the work, and is not an agreement to keep the pavement in repair: *Morse* v. *City of Westport*, 110 Mo. 502; *Gibson* v. *Owens*, 115 Mo. 258; *Barber Asphalt Pav. Co.* v. *Ullman*, 137 Mo. 543 (overruling *Verdin* v. *City of St. Louis*, 131 Mo. 33); *Wilson* v. *City of Trenton*, 60 N. J. L. 394; *Osborne* v. *City of Lyons*, 104 Iowa, 160; *Cole* v. *People*, 161 Ill. 16; *Schenectady* v. *Trustees, etc.*, 21 N. Y. Supp. 147.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

1. This is a suit to restrain the City of Portland from collecting an assessment levied upon abutting property to defray the expenses of an improvement of Sixth Street, in said city. The city charter provides that the Common Council of the City of Portland has power and is authorized, whenever it is deemed expedient, to improve any street or part thereof, but that no such improvement shall be undertaken without ten days' notice thereof being first given by publication in some daily newspaper published in the city, and that no such notice shall be given until the owners of one-half of the property affected by such improvement shall petition for the same : Charter of the City of Portland, §§ 94, 95 (Laws, 1891, p. 823). The legislature has thus prescribed the prerequisites to the jurisdiction of the common council to make the improvement, one of which is that the owners of one-half of the property affected by the proposed improvement shall petition for the same, and this must precede the notice. Without such petition, the common council is not authorized to proceed. The petition is constituted the basis of its power and authority to do any act looking to the improvement and consequent assessment of abutting property. The charter regulations in this respect, as in all others where the property of individuals is to be taken or incumbered without their consent, are to be strictly construed, and every substantial requirement must be complied with before the power of the council thus delegated can be exercised. Without such compliance its jurisdiction to act is absolutely and entirely wanting, and proceedings had and taken would necessarily be void and without effect for any purpose : *Oshkosh City Ry. Co.* v. *Winnebago County*, 89 Wis. 435 (61 N. W. 1107); Cooley, Tax'n, 464.

In the case at bar, there was a petition presented to

the common council, praying that the improvement be made in accordance with certain specifications attached, whereby it was shown, among other things, "that it is expedient and necessary to make said improvement, and that they, the undersigned petitioners as aforesaid, are the owners in fee of more than one-half the property affected by said proposed improvement, and abutting upon said portions of said street so proposed to be improved as aforesaid." This petition was signed by numerous persons, but not verified. The complaint attacks it, and alleges that it was not subscribed by the owners of one-half the property to be affected by the improvement, specifying certain particulars, as follows: That the name of the Oregonian Publishing Company appears subscribed to said petition by H. L. Pittock, and is represented to be the owner of lots 3 and 4, block 177, City of Portland; that at the date of signing and presentation thereof said company was not the owner of such lots, and that H. L. Pittock had no authority to subscribe the name of said company thereto; that L. A. Godard and William Frazier subscribed said petition as the owners of the east sixty feet of lots 1 and 4, block 45, Couch's Addition, and that said Godard and Frazier own but an undivided two-thirds of said property; that Louise P. Vial subscribed said petition as the owner of lots 5 and 6, block 175, and that she owned but an undivided half of said lots; that Loyal B. Stearns subscribed as the owner of lot 5, and the south twenty feet of lot 6, in block 173, and that he is not the owner of any part of said property, except the south twenty feet of the west half of lot 6, and of the west half of lot 5, in said block; that Martha M. Crowell, administratrix of C. F. Crowell, deceased, subscribed as the owner of lot 4, block 84, but that she had no authority to sign for said lot, and none is shown in the petition, and that

she is not the owner of said lot as administratrix; that the name of Mrs. Fannie E. Kelly appears subscribed as the owner of lot 4, in block 176, and purports to have been signed by Dan J. Malarkey, attorney in fact; that no authority is shown on said petition, and no power of attorney was or is of record, and the said Malarkey had no authority to sign said petition; that the Snell, Heitshu & Woodard Company appears subscribed to said petition by F. K. Arnold, secretary, as the owner of the east half of the fractional block 43, Couch's Addition; that said Arnold had no authority to subscribe the name of the company thereto, and no such authority is shown upon the face of the petition; that the name of the Portland Gas Company appears subscribed to the petition by C. F. Adams, president, as the owner of lots 5 and 6, block 47, Couch's Addition; that the said Adams had no authority to sign the same, nor is there any shown upon the face thereof; that the name "Wardens and Vestry of Trinity Parish, by James Laidlaw, Clerk," is subscribed as the owner of lots 5 and 6, block 69, City of Portland; that the rector, wardens, and vestrymen of Trinity Parish were at the date of such signing, and ever since have been, the owners of said lots, and that the said Laidlaw had no authority to sign the petition for said church, nor is any such authority shown by the petition; that the name of Mrs. Eliza Young, by D. W. Wakefield, attorney in fact, appears upon said petition as the owner of one-third of lots 6 and 7, block 41, Couch's Addition; that no power of attorney to the said Wakefield appears of record, and no authority to sign said petition is shown; and that the said Eliza Young owns the west half of the easterly two-thirds of said lots 6 and 7. At the trial the petition was offered in evidence, but no other evidence was introduced tending to show that Dan J. Malarkey was the attorney in fact of

Mrs. Fannie E. Kelly, or what authority he had to sub-
scribe her name to the petition.  The same is true touch-
ing the representative character and authority of D. W.
Wakefield to subscribe the name of Eliza Young, of F.
K. Arnold for signing the name of the Snell, Heitshu &
Woodard Company, and C. F. Adams that of the Port-
land Gas Company.

In view of this state of the record, plaintiffs advance
three propositions, which we will now examine :  First,
that the petition was insufficient to confer jurisdiction on
the common council to make the improvement.    It
is maintained that it should show the requisite facts
affirmatively, so that it would be perfectly patent and
apparent, without evidence or further inquiry *aliunde*,
that it was subscribed by the owners of one-half the prop-
erty affected ;  that is to say, it should show the area to
be affected, then the exact area owned by each petitioner,
with definite location and description, so that there would
remain but a simple mathematical deduction to ascertain
whether that subscribed for equals one-half of the prop-
erty affected ;  second, that the burden of proof in the
establishment, of the jurisdictional facts was with the
city, and this required it to show primarily not only the
representative character of the supposed agents signing
the names of their principals, but their authority to so
act ;  and, third, that the petition was not in fact sub-
scribed by the owners of the requisite proportion of the
property affected.

2.  It is urged that the common council, in its de-
termination touching the sufficiency of the petition, and
therefore of its authority to proceed, does not act in the
exercise of any judicial function, but as an administrative
agent of the city to carry into effect the purposes of its
citizens.   It is true, the common council is not classed
as a judicial body, but there is no doubt that it has *quasi*

judicial functions to perform in the course of its proceedings for street improvements, and the assessment of the necessary expenses therefor upon abutting property. The proceedings of such bodies may be reviewed upon a certiorari or writ of error, but not of those acting in a purely ministerial or administrative capacity. We believe the better view to be that the common council is clothed with, and acts in the exercise of, *quasi* judicial functions while in the employment of its power and authority under the charter in making such improvements. But the question as to its jurisdiction to act in any given case, like courts of limited, special and inferior jurisdiction, is always open to inquiry; and, in any event, its decision or determination may be attacked collaterally for want of such jurisdiction. It cannot legally assume to act until the facts exist upon which its jurisdiction depends, and no decision or determination that it has it can avail in the absence of such facts. By the express charter provisions, it is not to give notice, or act in the exercise of the power delegated, until the requisite petition is filed; and its judgment that it conforms to the requirements of the charter could not make it so, if it was otherwise, or give it validity *in invitum: Cagwin* v. *Town of Hancock*, 84 N. Y. 532. Notwithstanding, the council is bound to exercise its judgment in determining whether a valid petition has been presented, and this it does for the purpose of ascertaining whether it is warranted in taking further action under it, yet its judgment is not conclusive unless made so by express legislation, and such is not the case under the charter. Inquiry may be made, therefore, with respect to the fact of jurisdiction, in a proceeding to enjoin the collection of an assessment purporting to have been made by and through the authority of the council: *Ogden City* v. *Armstrong*,

168 U. S. 224 (18 Sup. Ct. 98) ; *Mulligan* v. *Smith*, 59 Cal. 206 ; *Sharp* v. *Speir*, 4 Hill, 76 ; *Miller* v. *City of Amsterdam*, 149 N. Y. 288 (43 N. E. 632).

3.   The petition presented was in writing, and prays the improvement of Sixth Street from the north line of Morrison Street to the south line of Hoyt Street, except the intersections with Washington and Glisan streets.   It shows by direct allegation that the petitioners "are the owners in fee of more than one-half the property affected by said proposed improvement, and abutting upon said portions of said street so proposed to be improved as aforesaid."   Aside from this, there is set opposite the name of each petitioner an abbreviated description of the property affected, and purporting to be owned by him.   The charter does not require verification, but only that a petition of the owners of one-half.the property should be presented.   No special or particular form has been prescribed, nor is there any direction touching what particular allegations are necessary to its validity ; so that we are left to determine its sufficiency from general rules applicable in the premises.   It is said by counsel that the allegation contained therein as to ownership was neither required nor authorized ; hence, that it can serve no purpose with the council in acquiring jurisdiction, because the charter has not made jurisdiction to depend upon such a representation alone.   True ; nor could jurisdiction be conferred by the most elaborate allegations showing the entire area affected by the proposed improvements, together with an exact description and area of each lot or part thereof owned by the subscribers, so that it might be seen at a glance that the owners of more than one-half the property affected had petitioned, if the allegations were untrue, and the owners of one-half such property had not in fact signed the petition.   As we

35 OR.—28.

have seen, the jurisdiction of the common council depends upon the fact that the owners of the requisite one-half had petitioned, and not upon its findings and determinations concerning such fact; nor does the absolute averment of the fact in any form in the petition confer jurisdiction, unless the truth of the averment or averments can be maintained. But does not the averment alluded to serve a purpose, and a most vital one, in determining the sufficiency of the petition, when taken in connection with the description of the property set opposite the names of the subscribers? We take it that it is the equivalent of an averment that the subscribers are severally the owners in fee of the lots or parts of lots described and set opposite their names, and that such property would be affected by the improvement. Now, there was left to the common council to inquire touching the area to be affected by the whole improvement, and then to determine whether the aggregate, as owned by the petitioners, equaled the half of it. It might have been a convenience if the petition had alleged these ultimate facts more specifically, but it failed in this particular, and the question is upon its sufficiency in view of such failure. With the petition before the council, it was enabled, by reference to convenient records, to determine for itself whether the subscribers represented more than one-half of the property affected; and the record shows that the council referred it to the city surveyor, who reported that the owners of more than one-half had signed; thereupon it was determined by the council that the owners of one-half the property affected thereby had petitioned, and that the notice required by the charter should be given.

In *Bewley* v. *Graves*, 17 Or. 274 (20 Pac. 322), the question came up touching the sufficiency of a petition for the laying out of a county road, and it was held, under

Section 4062, Hill's Ann. Laws (which provides that all applications for laying out, altering, or locating such roads should be by petition signed by at least twelve householders of the county residing in the vicinity where said road is to be laid out, which petition shall specify the place of beginning, the intermediate points, if any, and the place of termination), that while it would be convenient in practice to allege in the petition the fact that the petitioners were householders, just as it was alleged that they resided in the vicinity where the road was laid out, yet that it was not a nullity because it omitted such allegation, and that it was sufficient if it specified the place of beginning, the intermediate points, if any, and the place of termination, and was signed by at least twelve householders. Here is a direct statement that it is not necessary to allege that the petitioners were householders, and a strong intimation that it was not even essential for the petition to show that they resided within the vicinity of the road ; yet, as a matter of fact, it was essential that at least twelve householders residing within the vicinity of the road should petition for laying it out, before the court could acquire jurisdiction to act. See, also, *Humboldt County* v. *Dinsmore*, 75 Cal. 604 (17 Pac. 710); *Banse* v. *Town of Clark*, 69 Minn. 53 (71 N. W. 819, 820) ; Lewis, Em. Dom. § 347. While the findings of the county court touching the fact may have been conclusive when questioned collaterally, yet the case serves to illustrate the question of the sufficiency of the petition. The charter has not made it a prerequisite that the petition should show with particularity and mathematical precision the ownership of all the property affected, supplemented with apt allegations, so as to demonstrate upon its face that the owners of one-half the property to be affected had subscribed, but only that a petition of such owners should be presented. The

petition herein is much more specific, as it respects the jurisdictional facts, than in *Bewley* ·v. *Graves*, 17 Or. 274 (20 Pac. 322). It contains a substantial statement of the ownership in fee of the property to be affected, with a definite description of the street and portions thereof to be improved. With this petition before it, the common council could conveniently determine whether the owners of one-half the property to be affected had petitioned ; and, in our judgment, it was sufficient upon its face, under the charter.

4.   Let us now consider whether the burden of proof is cast upon the city to establish and maintain its jurisdiction in the first instance. The suit is an attack upon the proceedings of the council, with a view to have them declared void and of no avail, and thus to be relieved of the apparent cloud upon plaintiffs' title. This purpose should be kept in view as we proceed. In *Ogden City* v. *Armstrong*, 168 U. S. 224 (18 Sup. Ct. 98) a case of marked analogy to the one at bar, the court said : "It is an admitted fact upon the face of the pleadings that the common council actually found that the necessary jurisdictional fact existed, and that such a finding was made a matter of record. The plaintiffs alleged in their bill, and the defendants in their answer denied, that the finding of the jurisdictional fact by the common council was not a true finding. Such an issue required evidence *dehors* the record of the proceedings before the council in order to impeach their findings." If the plaintiffs are called upon to impeach the findings and record of the council, the burden of proof is certainly with them for that purpose. Mr. Dillon, in his work on Municipal Corporations (vol. 2 [4 ed.], § 800), says : "Where the power to pave or improve depends upon the assent or petition of a given number or proportion of the proprietors to be affected, this fact is jurisdictional, and· the

finding of the city authorities or council that the requisite number had assented or petitioned is not, in the absence of legislative provision to that effect, conclusive. The want of such assent makes the whole proceeding void, and the nonassent may be shown as a defense to an action to collect the assessment, or may, as has been held, be made the basis for a bill in equity to restrain a sale of the owner's property to pay it." Mr. Cooley says : "Any decision or certificate of the proper authorities that the requisite application or consent had been made would not be conclusive, but might be disproved :" Cooley, Tax'n, 465. In *State ex rel.* v. *Nelson*, 57 Wis. 147, 151 (15 N. W. 14), it was held that if an allegation in the petition that the petitioners were freeholders residing within the town was not sufficient to show *prima facie* that they were qualified, "the fact that the supervisors, who presumably knew whether they were or not, acted upon the petition, and disposed of it on the merits, is sufficient to cast the burden of showing the disqualification of the petitioners upon the party who asserts it."

*Hudson County* v. *City of Bayonne,* 54 N. J. Law, 293 (23 Atl. 648), is a case where the proceeding was attacked upon the ground that a signature upon the petition was not authorized, or was not the signature which it purported to be. The court held that "the circumstance that the body to whom it was presented has acted upon it as genuine is *prima facie* evidence that it is what it purports to be." In another case reported (*Tibbetts* v. *North and South Towns St. Ry. Co.*, 153 Ill. 147, 38 N. E. 664) the court said : "Appellant's theory seems to be— and on that theory alone he attacks the validity of these ordinances—that the petitions are invalid because they show on their face that the names of some of the signers were signed by agents, and the agents' authority does not appear on or with the petitions themselves, and that

without such signatures the petitions would not contain the requisite signers.  *  *  *  These allegations of the bill may be perfectly true, and on the demurrer must be so taken, and yet every name purporting to have been signed by another may have been so signed by full authority given orally or in writing, and the council may have had before it ample evidence of that fact.  If it be conceded, as contended by counsel for appellant, that the statute requires a written petition, it does not follow that the authority of the agent who signed the name of his principal to such petition must also be in writing, or, if. in writing, that it should accompany the petition.  There is nothing in the statute changing the common-law rule by which an agent may sign the name of his principal to a writing under authority not in writing.  'The common law does not require that an authority to an agent to sign an unsealed paper or a written contract should also be in writing.  Thus, for example, an agent may, by verbal authority, or by a mere implied authority, sign or indorse promissory notes for another.  And even where a statute, such as a statute of frauds, requires an instrument to be in writing in order to bind the party, he may, without writing, authorize an agent to sign it in his behalf, unless the statute positively requires that the authority also should be in writing,' "—citing Story, Ag. § 50.  In harmony with the foregoing authorities, see, also, *Tibbetts* v. *North & South Towns St. Ry. Co.*, 54 Ill. App. 180 ;  *North Chicago St. R. R. Co.* v. *Cheetham*, 58 Ill. App. 318 ;  *Boyle* v. *City of Brooklyn*, 71 N. Y. 1 ;  *Auditor-General* v. *Fisher*, 84 Mich. 128 (47 N. W. 574).

5.  The charter has not prescribed how the owners shall sign or subscribe the petition,—whether in person or by agent ;  neither has it directed that the signature be accompanied with a seal.  We may suppose, therefore, that the affixing of the petitioner's name in the

ordinary way and by the ordinary means is sufficient. In a sense, the signing of the petition in the name of the principal by the agent is a representation that the party assuming to act in that capacity is the agent of the petitioner.   Matters which tend further to establish the agency are but evidentiary of the fact, and it is unnecessary to incumber the record with them, except it is required by legislative enactment.   Inquiry may be made *dehors* the record touching the agency (*Los Angeles Light. Co.* v. *City of Los Angeles,* 106 Cal. 156, 161, 39 Pac. 535); and, if the common council is satisfied that the agency exists as represented, it may act, and its record must be taken as *prima facie* evidence of the fact.   He who would impeach the record, therefore, must disprove the fact, and upon him is cast the burden of proof.   So it is here. The plaintiffs having alleged that certain individuals and corporations whose names appear to be attached to the petition by their agents did not subscribe it, the burden is with them to show the want of authority of the supposed agents, if they would impeach the action of the common council, and thereby invalidate and enjoin the assessment.   It cannot be true that, whenever a party affected by an assessment for improvements attacks the proceedings by which it is laid, the mere fact of filing the complaint casts the burden upon the city of establishing the regularity of such proceedings in all respects, as it pertains to the acquirement of jurisdiction.   The usual rule is that the complainant has the burden of proof, and if he establishes a *prima facie* case, then must the opposing party overcome it or fail.   If the record discloses its invalidity upon its face, then plaintiffs would not be required to do more than introduce it, which would make a *prima facie* case ;   but, if the record appears regular, and the want of jurisdiction is to be

established by proof *aliunde*, then must the plaintiffs assume the burden, as the acts of the common council are presumed *prima facie* regular until shown to be otherwise. This is a legitimate deduction from the foregoing authorities, and the law was rightly applied in this respect by the able referee before whom the case was tried in the first instance, and by the court below.

Nor are the cases of *Sharp* v. *Speir*, 4 Hill, 76 ; *Mulligan* v. *Smith*, 59 Cal. 206 ; *In re Second Ave. M. E. Church*, 66 N. Y. 396 ; *Oshkosh City Ry. Co.* v. *Winnebago County*, 89 Wis. 435 (61 N. W. 110), or either of them, opposed to this view. In the first case noted, the want of jurisdiction in the common council to act appeared upon the face of the record, which was offered in evidence. This, of itself, was sufficient to impeach the action of the council. In the second case, the party attacking the record gave evidence showing the want of authority of certain supposed agents to sign for their principals. The New York case seems to be a special proceeding to vacate an assessment instituted under the revenue laws of the state, and it was there held that the city had the substantial affirmative ; that is, it should have produced express power in legislative enactment, and shown that, in its attempt to tax, it strictly followed the legal requirements ; and this is the holding of the Wisconsin case. The idea of these latter cases is that, primarily, when the authorities are proceeding with the assessment, they must substantiate their acts as they proceed by warrant of law. The effect of their acts in a proceeding to avoid the assessment, whether direct or collateral, was not considered, nor did it become a question in the cases. The record here was therefore *prima facie* sufficient to establish the authority of Dan J. Malarkey to subscribe the name of Mrs. Fannie E. Kelly

as her attorney in fact; of D. W. Wakefield, F. K. Arnold, and C. F. Adams, that of their respective principals.

6. The "Oregonian Pub. Co., by H. L. Pittock, Sec'y," it is contended, under the attendant circumstances, was not a signing by the owner of lots 3 and 4, block 177, City of Portland, which were set opposite the name. The facts are that prior to the signing the lots had been purchased by H. W. Scott and H. L. Pittock with the means of the Oregonian Publishing Company, and solely for its use and benefit; but the title was taken in their names for convenience only, and they had or possessed no interest whatever in the property, except that they held it in trust, under the circumstances, for the company. While the title was in this condition the Oregonian Publishing Company petitioned for the improvement in the manner described. The charter requires that the petition shall be by the owner of the property affected, and directs that the assessment shall be made on such property. Now, we take it, if the assessment had originally been made against the Oregonian Publishing Company *in invitum*, and if such assessment was sufficient in law to bind the property, then that a signing by the publishing company as the owner would be, as far as it is concerned, a sufficient signing to give the common council jurisdiction to proceed with the improvement. There is no question but that the Oregonian Publishing Company was in reality the owner and sole proprietor of the lots in question, and that Messrs. Scott and Pittock were the holders of the naked legal title, without an iota of beneficiary ownership therein, except as stockholders in the concern. They were passive trustees of the legal title; nothing more. If the assessment had been made on the lots as the property of Messrs. Scott and Pittock as individuals, the title appearing to be in their names upon

the record, without showing a trustee relationship, it would assuredly have been good and valid, for ordinarily the assessing officer is not required to search beyond the record. But, having been made upon the property as that of the Oregonian Publishing Company, it being in reality the owner, there appears no sufficient reason why the assessment ought not to be equally as good. Messrs. Scott and Pittock could never deny that the Oregonian Publishing Company was for all practical purposes the owner, and, of course, the company could not dispute its ownership. If the assessment was an ordinary one under the statute for assessing real property, which provides that it shall be assessed to the owner,—having been listed in the name of the Oregonian Publishing Company,—there could exist scarcely a doubt that a sale under the assessment would carry the title, and no one could successfully dispute the validity of the assessment, or the title conveyed by virtue of it, on that account. This is not the case of a contract of sale, like that reported in *Tracy* v. *Reed*, 38 Fed. 69, where not only the legal title, but the beneficial interest, is retained by the vendor to insure compliance with the conditions of the contract, but one in which the officers and agents of a corporation have, purely as a matter of convenience, taken to themselves the legal title, without acquiring or claiming a scintilla of beneficial interest. The object of the law in requiring the owner's name to be entered in connection with the assessment of his property is that he may have notice, and not be misled by the record, as he would be if it were allowed to be made thereon as the property of a person having no connection with it: Black, Tax Titles, § 105. The reason of the rule can have no application here, as the real party, having the only beneficial interest in the premises, has been named as the owner thereof. The idea finds support in the fol-

lowing cases :  *City of Muscatine* v. *Chicago, etc. Ry. Co.,*
79 Iowa, 645 (44 N. Y. 909); *Wells* v. *Mayor of Savannah,* 87 Ga. 397 (13 S. E. 442).  So we take it that the
assessment in the present case would have been good if
made upon the property as that of the Oregonian Publishing Company *in invitum,* and therefore that a signing
of the petition by the company, with the other owners
named, was sufficient to confer jurisdiction upon the
common council to proceed with the improvement.

7.  It is next contended that Mr. Pittock had not the
authority from the publishing company to sign the petition in the name of the company.  The plaintiffs offered
no testimony to show the want of authority in Pittock
to sign as he did, relying upon the theory advanced by
them, that the burden of proof was with the city to
establish such authority.  But, as we have seen, the
burden was with the plaintiffs.  The defendant, however, offered some proof touching the matter, and it appears by the testimony of Mr. Scott that no resolution
was passed by the board of directors of the company
authorizing the signing;  and this, it is contended, is
sufficient to show that Mr. Pittock did not have the authority, and therefore that the signing was void.  It was
further shown that Mr. Pittock was the manager of the
concern, and transacted the entire business thereof, except
such as arose out of the usual course thereof, and then
that it was the habit of Mr. Pittock and Mr. Scott to
consult with each other, and whatever they agreed to was
carried into execution.  There were but three directors,
and Mr. Pittock and Mr. Scott were two of them ;  Scott
being president, and Pittock secretary.  Now, at the
time the signature of the company was affixed, Scott and
Pittock had consulted about the matter of the street improvement, had agreed concerning it, and had concluded
that it would be to the best interest of the company to

have it made, and in pursuance of this determination
Mr. Pittock subscribed the name of the company to the
petition.   "Authority in the agent of a corporation may
be inferred from the conduct of its officers, or from their
knowledge and neglect to make objection, as well as in
the case of individuals :" *Sherman* v. *Fitch*, 98 Mass. 59.
In *Lyndeborough Glass Co.* v. *Massachusetts Glass Co.*, 111
Mass. 315, it was said :   "There was sufficient evidence
to sustain the finding that Smith, who made the contract
for the purchase of the goods sued for, was authorized to
do so by the corporation.   He was their 'superintendent
of works,' he acted as agent of the corporation in this
purchase, and the goods purchased were received by,
and went to the benefit of, the corporation.   A formal
vote giving him authority was not necessary.   He made
the contract with the knowledge and sanction of all the
officers and stockholders except one, and that one was
informed of it soon after the goods were purchased, and
no action was ever had repudiating it.   There was suffi-
cient evidence to justify a finding either of an original
authority or of a subsequent ratification by the corpora-
tion."   We think that under the conditions of this case,
and within the purview of these authorities, the signing
of the name of the Oregonian Publishing Company by
H. L. Pittock, Secretary, was binding upon the com-
pany, and sufficient to give the council jurisdiction to
act in the premises, if otherwise authorized.

8.   "The corporate seal need not be attached to a cor-
porate contract, unless a similar contract made by an
individual would require a seal :"   Cook, Corp. § 721.
We have seen that the signing of the petition is not re-
quired by the charter to be under seal, and, this being
so, a corporation is no more required to attach its cor-
porate seal than an individual would be required to affix
his private seal.

9.   Louise P. Vial signed the petition for lots 5 and 6, block 175, and her authority for so signing is challenged. It appears by the record that her ownership of the property depends upon a will of her husband, the first clause of which reads as follows : ''I give, bequeath, and devise to my beloved wife, Louise Polin Vial, all my real estate situated in the City of Portland, Oregon, and elsewhere, until the youngest child by said Louise Polin Vial and myself. shall arrive at legal age, under the laws of the State of Oregon, hereby giving to my said wife the use and occupation, rents and profits, of all my real estate for her support and maintenance, and the proper education and maintenance of my children last aforesaid.'' By another provision of the will he directed that, when the youngest child should arrive at the legal age, one-half the property should be divided between the said children, and the other half should go to the wife for life, with remainder to the children.   At the time of the signing the youngest child was about thirteen years of age.   It is now contended that Mrs. Vial was not the owner of these lots, within the purview of the charter, and therefore that she had no authority to subscribe said petition as representing said property.   Under the law she was possessed of a determinable estate, and was intrusted with the sole management of the property, and we think she was the owner, within the intendment of the charter, and therefore authorized to sign in that capacity, as representing the lots in question :   *Garland* v. *Garland*, 73 Me. 97 ;   *Willard* v. *Blount*, 33 N. C. (11 Ired.) 624.

10.   There appears subscribed to the petition, ''Martha M. Crowell, 6th & Oak, Adm'x Estate of C. F. Crowell,'' representing lot 4, block 84.   An objection to such subscription was interposed on the ground that an administratrix has no power to sign for the estate.   The evidence,

however, shows that Martha M. Crowell was never the administratrix of the estate of Charles F. Crowell, and was not at the time she attached her signature to the petition. The will of Charles F. Crowell establishes the fact that she was the owner of said lot in fee and in her own right. The word "as," or other equivalent term, was not used to indicate that Mrs. Crowell signed the petition in her representative capacity. Under these conditions, the words "Adm'x Estate of C. F. Crowell" may be rejected as surplusage, and be considered merely as *descriptio personæ*, and therefore not fatal to the signature; so that Mrs. Crowell's name should be counted on the petition for the lot which she assumes to represent.

11. The corporation known as the "Rector, Wardens, and Vestrymen of Trinity Parish, Portland," subscribed the petition as the owner of lots 5 and 6, block 69, but the subscription is in the following words: "Wardens and Vestry of Trinity Parish, by James Laidlaw, Clerk." It is contended that this is not a signing by the real corporation. The evidence shows that the clerk was duly authorized to sign for the church by resolution entered of record, and there is no doubt but that he endeavored to carry out instructions and directions in attempting to sign the petition. An assessment against the church property under the name as signed would, under the authorities, be sufficient to insure its validity: *State* v. *Diamond Val. Live-Stock Co.*, 21 Nev. 86 (25 Pac. 448); *Lyle* v. *Jacques*, 101 Ill. 644. We think, therefore, that the signing was sufficient in the present instance.

12. Another objection is taken to the signing of the petition by L. A. Godard and William Frazier, as owners of the east sixty feet of lots 1 and 4, block 45, Couch's Addition. It was shown that they were the owners of an undivided two-thirds of said sixty feet only, and that L. P. W. Quimby owned the remaining interest. As the

greater includes the less in such cases, the representation that Godard & Frazier were the owners of the whole sixty feet, when in fact they owned only an undivided two-thirds, is sufficient to bind them, and the property was properly counted on the petition. This disposes of the objections to all the signatures, except that of Mrs. Eliza Young, and it is unnecessary to pass further upon hers.

There was also a controversy at the argument as to what property was affected by the improvement; that is to say, whether the lots or parts of lots specified in the charter had reference to original and fractional lots, as designated upon the maps and plats of the city, or as subdivided by purchasers, and therefore represented by present ownership. But this we are not called upon to decide. If the plaintiff's contention be conceded, that the area affected aggregates four hundred and sixty-seven thousand seven hundred and sixty-six and six-tenths feet, the half of it would be two hundred and thirty-three thousand eight hundred and eighty-three and three-tenths feet. The area properly represented on the petition, excluding any consideration of that represented by Eliza Young, is two hundred and thirty-four thousand five hundred and eighty-four and two-thirds feet, or a fraction over seven hundred and one feet more than one-half; so that the council, in any event, as shown by the record and the evidence, acquired the necessary jurisdiction to make the proposed improvement.

13. Another question, going to the jurisdiction of the council to make the improvement, is made upon the pleadings, and is presented for the first time in the appellants' reply brief. The idea of presenting it here seems to have been suggested by the case of *Portland* v. *Bituminous Pav. Co.*, 33 Or. 307 (44 L. R. A. 527, 52 Pac. 28), which case, it is urged, is decisive of the question in favor

of the plaintiffs. The amended complaint alleged "that it is provided in the resolution of said council, and notice published by said auditor, and in Ordinance No. 8327, that the contractor shall guarantee the paving for a period of five years, and repair the same at his own expense, and that the said City of Portland is without jurisdiction to so contract for the repair of a street in advance, or to increase the burden upon the property owners by entering into such contract." A motion was made to strike this out, and was sustained by the court below. Without any further amendment of the complaint, an answer was filed, and, the issues being made up, the case went to trial. At the trial the resolution and notice were offered in evidence, and are now contained in the record ; but the ordinance was not, and is not therefore before us for inspection. The resolution, among other things, recited and provided that the pavement must be laid under the official inspection of the superintendent of streets, and "that it shall be guaranteed for a period of five years from the date when it is opened to traffic, and during said period all defects in the pavement due to its proper use as a roadway shall be repaired and made good by the contractor at his own expense." The notice contains the same language concerning the guarantee and repairs. The language of the resolution and ordinance is more definite than that used in the complaint, in that it states more specifically what defects shall be repaired ; that is, such as may be due to "its proper use as a roadway." We will therefore consider the allegation as though it stated the exact fact. In the case alluded to, the ordinance provided that the contractor should give a sufficient bond to the city, conditioned that he would commence and complete the proposed improvement in accordance with the specifications therein mentioned ; and, in addition thereto, it exacted another bond, equal to twenty-five per

cent. of the contract price, conditioned that for a period
of five years from the date of its completion, the con-
tractor would keep the pavement in repair, by immedi-
ately, upon proper notice, repairing at his own expense
and cost any injuries or worn out places, or other defects
due to traffic, or on account of disintegration or decay,
or in any manner attributable to defective materials or
workmanship. Thus, the ordinance required two bonds
of the contractor. In its decision it was said by this court
that "the evident purpose of the common council, in re-
quiring the larger bond was to secure a faithful perform-
ance of the contract in all its details, as by its terms it is
equivalent to a requirement that the improvement shall
be completed according to specifications; and this, we
assume, comprehends the quality of the materials stipu-
lated for, as well as the manner of the workmanship. So
there would appear to be no need of the lesser one, ex-
cept to subserve some other purpose, and it is not reason-
able to suppose that the two bonds are intended to afford
to the city cumulative remedies for the accomplishment
of one and the same end." The suit was brought upon
the latter bond, and concerning that instrument we said:
"The causes assigned are so broad and comprehensive
in their scope as to include injuries arising from every
substantial source, and, in effect, subjoin an independent
condition, not covered by the contract. So that the
undertaking is simply to keep and maintain the street
pavement in repair for a designated period of time,
regardless of the quality of the material stipulated to
be furnished or supplied, or the workmanship to be em-
ployed." Under those conditions, it was held that the
council was without power or authority to assess the
abutting property owners with the expense of anticipated
repairs, and this is as far as the case goes.

35 OR.—29.

The case now presented is not of that nature. The contractor is required to guarantee the work and pavement for a period of five years, and that during said period all defects in the pavement, due to its proper use as a roadway, shall be repaired. This cannot be construed to comprehend more than a guarantee of the faithful performance of the work. We said in the former case that "a guarantee against injuries for a reasonable time after completion, which may be attributable to these specific causes [defective materials and workmanship], might be regarded as a suitable, and perhaps proper, test of substantial compliance on the part of the contractor, and therefore might be held to operate as a guarantee of faithful performance, for it is sometimes argued that, if the work is well done, it would need no repairs within such time." In the case at bar the contractor has assumed to repair defects due to its proper use as a roadway, not, as in the case of *Portland* v. *Bituminous Pav. Co.*, 33 Or. 307 (44 L. R. A. 547, 52 Pac. 28), as against "injuries arising from every substantial source;" so that it may readily be seen there is a substantial difference in the facts presented. The distinction is clearly shown by reference to the cases of *People ex rel.* v. *Maher*, 56 Hun, 81 (9 N. Y. Supp. 94), and *City of Schenectady* v. *Union College*, 66 Hun, 179 (21 N. Y. Supp. 147), which distinction was noted and commented upon in the *Bituminous Paving Co. Case.* In the *Maher Case* the condition was "to keep the said pavement in repair for seven years from and after its acceptance by the city without expense to said city or abutting property owners;" and in the *Schenectady Case* the undertaking was to "do all the work required by such ordinance and this contract in such good and substantial manner that no repairs thereto shall be required for the term of five years after its completion." In the former case it was held that the obliga-

tion was to "keep in repair," while the latter contained only a guarantee of substantial work in accordance with the contract. A like distinction is observed in *Barber Asphalt Pav. Co.* v. *Ullman*, 137 Mo. 543 (38 S. W. 458). Such is the effect of the guarantee in the case at bar, rather than an undertaking to keep in repair; and the assessment, therefore, against the abutting property for the improvement, was not objectionable upon the ground urged.

14. This leaves yet another question for our disposal. Since the decision by the Supreme Court of the United States in *Village of Norwood* v. *Baker*, 172 U. S. 269 (19 Sup. Ct. 187), appellants have filed an application in this court for leave to make additional assignments of error in the abstract of the record, and to file a supplemental brief, for the purpose of raising upon the record of this court, and presenting for argument, the question whether or not the provisions of the Charter of the City of Portland under which the assessment was made are unconstitutional and void, and in contravention of the Fourteenth Amendment to the Constitution of the United States. The application was presented when the case was heard, and the parties were permitted to go into the argument of the constitutional question, with a view to a full hearing, should it be considered that the question was pertinent under the issues made by the pleadings. Leave to make the additional assignments and file the supplemental brief is granted, so that the record may show what was done.

We are of the opinion, however, that the federal question cannot be considered, as it is not appropriately presented by the record. The complaint sets up with some minutiæ the history of the proceedings which they desire to have annulled and set aside; but it nowhere sets forth any particular section or provision of the Charter

of the City of Portland, nor does it claim in any manner
that any provision of said charter is unconstitutional,
either under the state constitution or that of the United
States, and in no way does it present the question as to
the unconstitutionality of the charter, or of the proceed-
ings of which they complain had thereunder, as a careful
resume of the complaint will show.   Several complain-
ants have joined in the suit, and after setting out their
status as plaintiffs, and describing the lots owned by
them, they allege that all the real property abuts upon,
and is situate within one hundred feet of, the street to be
improved.   They show the incorporation of the Trinidad
Asphalt Paving Company and the Portland Bituminous
Paving & Improvement Company, and the purposes
thereof ; that on the third of May, 1893, a petition was
presented to the common council for the improvement
of Sixth Street, and that by resolution it caused the
auditor and clerk of said city to give notice of the pro-
posed improvement.

    Then follows this allegation : "That no other or further
notice for the improvement of Sixth Street between the
points named was ever published, and that said notice is
void for the reason that it does not specify with conven-
ient certainty the street or part thereof to be improved,
or the kind of improvement to be made, and no notice
for the improvement of said street, as required by the
charter of said city, has ever been published ; that no
other or further petition for the improvement   *   *   *
was ever presented to said common council, save the one
presented May 3, 1893 ;  that said petition presented May
3, 1893, as well as the action of the common council
thereon, and said notice published in pursuance thereof,
was and is, and each of them is, void and unauthorized,
for the reason that said petition was not signed by the
owners of one-half of the property to be affected by said

proposed improvement, and the owners of one-half of the property abutting upon said street, and lying between the points named, and affected by said proposed improvement, have never petitioned therefor." The particulars are specified wherein it is thought the petition is insufficient. They allege further that the parties securing the contract for doing the work were guilty of certain fraud; that on June 7, 1893, the common council passed Ordinance No. 8327, which provides for the manner of making the improvement; that bids were advertised for, a remonstrance filed, which the council failed to pass upon, and thereafter the contract for making the improvement was entered into; that the contractor failed to do the work in accordance with the specifications thereof; and that on September 11, 1893, the common council, acting arbitrarily and fraudulently, and disregarding the protests of plaintiffs, pretended to accept the work done under the contract. The assessments made upon the lots and property of plaintiffs, and the entry thereof upon the docket of city liens, are shown, and then follow these allegations: "That said proceedings of said City of Portland for the improvement of said Sixth Street, and ordinances passed in pursuance thereof, as well as said assessment attempted to be levied to provide the fund for the payment of the same, and contract let for the improvement of said street, are, and each of them is, null and void, for the reasons, in addition to the reasons hereinbefore shown, that there was an unlawful combination between the bidders for said contract, and that said contracts were fraudulently let for a gross and outrageous price for the work, and that no notice of said assessment was ever given prior to the entry thereof in the docket of city liens." After the guarantee of the contractors is shown, they further allege "that said pretended proceedings of said common council for

the improvement of Sixth Street, and all resolutions, notices, and ordinances passed in pursuance thereof, and the assessment pretended to be levied upon the property for the payment of the same, were, and each of them is, null and void," and, in effect, that a warrant had been issued, and the chief of police was proceeding to enforce the collection of assessments by sales of the property, and "that there is no valid assessment against any of said lots of ground, and said warrants have been issued without authority of law."

The assignments of error, as contained in the abstract of the record, Nos. 1, 2, 3, 4, 5 and 6, pertain to the exceptions taken to the findings of the referee, to whom the case was referred by the court below to take the testimony and make his findings of fact and law. Assignment No. 7 is as follows : "The court erred in holding and deciding that said petition, filed May 3, 1893, for the improvement of Sixth Street, was not void on its face;" and (No. 8) "in holding and deciding that said petition filed May 3, 1893, gave the common council of the City of Portland jurisdiction to act in the matter of said improvement of said Sixth Street." Assignments 9, 10, 11, 12, 13, 14, 15 and 16 refer to the findings of the referee touching the holdings and property ownership of several of the petitioners. Assignment No. 17 reads : "The court erred in computing or taking into account the area of any of said lots, in estimating the amount of property signed for on said petition;" (18) "the court erred in holding and deciding that the owners of one-half the amount of property abutting on Sixth Street, and affected by said improvement, had signed said petition therefor;" (19) "the court erred in not holding and deciding that the owners of one-half of the property abutting on Sixth Street, and affected by said improvement, had not signed said petition;" and (20) "the court erred in dismiss-

ing plaintiffs' complaint, and in awarding defendants
their costs and disbursements." The additional assign-
ments which the appellants are permitted to make are as
follows :   (21) "That the assessment sought to be en-
forced in this case is void, for the reason that it rests
upon an act that went into effect after its inception, and
to give the act such retroactive effect is contrary to the
state and federal constitutions, and principles denomi-
nated the 'law of the land,' and in contravention of the
Fourteenth Amendment to the Constitution of the United
States ;" and (22) "that the assessment upon the prop-
erty of plaintiffs for the improvement of Sixth Street was
laid without regard to any question of benefits to the
property, and under a rule which excluded any inquiry
as to special benefits, and constitutes a taking, under the
guise of taxation, of private property for public use, with-
out compensation, amounting to a taking of property
without due process of law, in contravention of Section
18 of the Constitution of the State of Oregon and of the
Fourteenth Amendment to the Constitution of the United
States, and the said assessment and the charter provis-
ions under which it was laid are unconstitutional and
void." These constitute all the assignments of error.

The reason advanced for the twenty-first assignment
is that the respondent had recently filed a supplemental
brief, wherein it was urged that by section 156 of the
charter of 1898 the assessment complained of was cured
and rendered valid. In our decision of the case thus
far we have had no occasion to refer to the said sup-
posed curative section, and have made no application of
it to the present controversy ; hence, the assignment is
without relevancy. It will thus be seen, from a syn-
opsis of the complaint and the findings of the referee,
that no question has been made upon the record touch-
ing the unconstitutionality of any clause of the city

charter, whether measured by the Constitution of the State of Oregon or of the United States. But now, for the first time, when the case has come on for argument, the appellants seek to present the federal question, special reliance being had upon the case of *Dewey* v. *City of Des Moines*, 173 U. S. 193 (19 Sup. Ct. 379), as indicative of the question being properly before us. In that case it is held, in accordance with the uniform utterances of the Supreme Court of the United States, that, "while no particular form of words is necessary to raise a federal question which may be reviewed by the supreme court, yet there must be something in the record before the state court which at least would call its attention to the federal question as one relied on by the party; and then, if the decision of the state court, while not noticing the question, was such that the judgment, in its necessary effect, was a denial of the right claimed or referred to, this is sufficient." Two questions of federal import were sought to be presented, one of which was deemed to have been properly assigned in the state court, and the above ruling was respecting it. The other was held not to have been well assigned. Concerning this it was said ( Mr. Justice Peckham speaking for the court): "No question of a federal nature claimed under the Constitution of the United States can be said to have been made by the mere allegation 'that the amount of said tax is greater than the reasonable market value of said lots, whether considered singly or together, the assessment against each particular lot, being greater in amount than the value of such particular lot, and the aggregate assessment being greater in amount than the reasonable market value of all of said lots taken together, and that said defendants are seeking to enforce, as against plaintiff, not merely a sale of said lots, but also to compel plaintiff to pay the full amount of said tax, regardless of what-

ever sum said lots may be sold for, and regardless of the actual value of the same.'   There is nothing else in the record which can be said to raise this federal right or claim.''

In *Powell* v. *Brunswick County*, 150 U. S. 433 (14 Sup. Ct. 166), it was held, in accord with previous decisions of the same court, that the certificate of the presiding judge of the state court as to the existence of a federal question in the record was not alone sufficient to confer jurisdiction upon the federal supreme court.   Such a question must in reality exist by the record.   Passing to the manner in which it should appear, Mr. Chief Justice FULLER says :   ''As many times reiterated, it is essential to the maintenance of jurisdiction upon the ground of erroneous decision as to the validity of a state statute, or a right under the Constitution of the United States, that it should appear from the record that the validity of such statute was drawn in question as repugnant to the constitution, and that the decision sustained its validity, or that the right was specially set up or claimed and denied.   If it appear from the record by clear and necessary intendment that the federal question must have been directly involved, so that the state court could not have given judgment without deciding it, that will be sufficient ;  but resort cannot be had to the expedient of importing into the record the legislation of the state as judicially known to its courts, and holding the validity of such legislation to have been drawn in question, and a decision necessarily rendered thereon, in arriving at conclusions upon the matters actually presented and considered.   A definite issue as to the validity of the statute or the possession of the right must be definitely deducible from the record, before the state court can be held to have disposed of such a federal question by its decision.''   In *Oxley Stave Co.* v. *Butler County*, 166 U. S.

648 (17 Sup. Ct. 709), Mr. Justice HARLAN says: "This court may re-examine the final judgment of the highest court of a state when the validity  *  *  *  of a statute of or an authority exercised under any state is 'drawn in question' on the ground of repugnancy to the constitution, treaties, or laws of the United States, and the decision is in favor of its validity." And this must appear on the face of the record : *Miller* v. *Cornwall R. R. Co.*, 168 U. S. 132 (18 Sup. Ct. 34). Again, as to the manner in which the question should appear. Mr. Chief Justice TANEY, in *Maxwell* v. *Newbold*, 59 U. S. (18 How.) 511, 516, says : "The questions raised and decided in the state circuit court point altogether for their solution to the laws of the state, and make no reference whatever to the constitution or laws of the United States. Undoubtedly this did not preclude the plaintiffs in error from raising the point in the supreme court of the state, if it was involved in the case as presented to that court. And whether a writ of error from this court will lie or not depends upon the questions raised and decided in that court. But neither of the questions made there by the errors assigned refer in any manner to the constitution or laws of the United States, except the third, and the language of that is too general and indefinite to come within the provisions of the act of congress or the decisions of this court. It alleges that the charge of the court was against, and in conflict with, the constitution and laws of the United States. But what right did he claim under the Constitution of the United States which was denied him by the state court? Under what clause of the constitution did he make his claim? And what right did he claim under an act of congress? And under what act, in the wide range of our statutes, did he claim it? The record does not show, nor can this court undertake to determine, that the question as to the faith and

credit due to the record and judicial proceedings in Ohio was made or determined in the state court, or that the court ever gave any opinion on the question."

In *Hoyt* v. *Shelden*, 66 U. S. (1 Black), 518, 521, the learned chief justice says : "This provision of the constitution is not referred to in the plaintiff's bill of complaint in the state court, nor in any of the proceedings there had. It is true, he sets out the act of the legislature of New Jersey, the proceedings and decree of the chancery court of that state under it, and the sale of the property in dispute by the authority of the court, which he alleges transferred the title to the vendee, under whom he claims, and charges that the assignment set up by the defendants was fraudulent and void, for the reasons stated in his bill. But all of the matters put in issue by the bill and answers, and decided by the state court, were questions which depended for their decision upon principles of law and equity, as recognized and administered in the State of New York, and without reference to the construction or effect of any provision in the constitution or any act of congress. This court has no appellate power over the judgment of a state court pronounced in such a controversy, and this writ of error must therefore be dismissed for want of jurisdiction." And again, in *Sayward* v. *Denny*, 158 U. S. 180 (15 Sup. Ct. 777), it is said : "The contention is that the result of the rulings and decisions of the trial court in these respects, as affirmed by the supreme court, was to hold plaintiff in error conclusively bound by the judgment rendered against Crawford in any action 'in which he was not a party, and of which he had no notice,' and that this was, in effect, to deprive him of his property without due process of law, or to deny him equal protection of the laws, and amounted to a decision adverse to the right, privilege, or immunity of plaintiff in error under

the constitution, of being protected from such depriva-
tion or denial.   But it nowhere affirmatively appears
from the record that such a right was set up or claimed
in the trial court when the demurrer to the complaint
was overruled, or evidence admitted or excluded, or in-
structions given or refused, or in the supreme court in
disposing of the rulings below.   *   *   *   ·We are not
called on to revise these views of the principles of general
law considered applicable to the case in hand.''   If there
has been any modification of the views expressed, as was
said by Mr. Justice HARLAN in *Oxley Stave Co.* v. *Butler
County,* 166 U. S. 648 (17 Sup. Ct. 709), it has been only
in the particular that it is not always necessary to refer
to the precise words or to the particular section of the
constitution under which some right, title, privilege, or
immunity is claimed, and that it is sufficient if it appears
affirmatively from the record that a right, title, privilege,
or immunity is specially set up or claimed under that
instrument or under the authority of the United States.
See, also, as bearing upon the question, *Chicago, B. & Q.
R. R. Co.* v. *City of Chicago,* 166 U. S. 226 (17 Sup. Ct.
581);   *Levy* v. *Superior Court of San Francisco,* 167 U. S.
175 (17 Sup. Ct. 769);   *Louisville & Nashville R. R. Co.* v.
*City of Louisville,* 166 U. S. 709 (17 Sup. Ct. 725).

While these cases are all touching the requisite state
of the record for the conferring of jurisdiction upon the
Supreme Court of the United States by writ of error to
the highest court of a state, we take it to be a principle
of law deducible from them that it is not sufficient to
assign error upon the federal question for the first time
in the supreme court of the state, unless by fair inference
and intendment it may be said to exist in the record as
made by the parties in the trial court.   ''If it appear
from the record,'' as was said in *Powell* v. *Brunswick
County,* 150 U. S. 433 (14 Sup. Ct. 166), ''by clear and

necessary intendment, that the federal question must have been directly involved, so that the state court could not have given judgment without deciding it, that will be sufficient.'' Unless the federal question does so appear, by fair inference or necessary intendment, and thereby become involved in the court's final disposition of the cause, it cannot be imported into the case by a declaration in an assignment of error that some clause of the federal constitution has been violated by the judgment or decree. Now, this is a suit in equity, and the trial here is anew upon the transcript and the evidence accompanying it. The complaint filed nowhere nor in any form states any facts which can reasonably be said to present or involve a federal question, and especially does it not allege any facts which involve the question, by the remotest inference, which the counsel seek to have decided, viz., that the assessment was without reference to the benefits accruing to the property, and which, it is alleged in the assignment of error for the first time, resulted in the taking of property without due process of law. Furthermore, in the testimony taken in the court below, there is no proof going to the question of the benefits derived from the assessment, or tending in any manner to show that the assessment was in excess of the benefits accruing to the property by reason of the improvement. So that, nowhere in the proceedings, as exhibited by the record or testimony, is the federal question raised or presented, nor can it be said to be involved. As was the case in *Hoyt* v. *Shelden*, 66 U. S. (1 Black), 518, all the matters put in issue by the complaint and the subsequent pleadings, and also all matters which are germane and might properly arise under the proofs made and decided by the court below, were questions which depended for their decision upon principles of law and equity, as administered by the courts of the state, and

without reference to the construction or effect of any provision of the federal constitution. So that, being called upon here to try the case upon the transcript and the evidence as brought from the court below, we feel entirely unauthorized to go outside of the record and pass upon a mooted federal question, which is manifestly foreign to, and without the scope of, the controversy as made. These considerations affirm the decree of the court below, and it is so ordered. Aғғɪʀᴍᴇᴅ.

Decided 26 June, 1899.