H. B. HEDGE, Appellee, v. CITY OF DES MOINES, Appellants.

**Municipal corporations:** SPECIAL ASSESSMENTS: OBJECTIONS: EVIDENCE
1 OF FILING. On appeal from the assessment of the cost of certain paving the evidence is held to show that an amendment to the original objections filed before the city council was in fact filed, although not found among the files at the time of the trial in the district court, and therefore is treated as a part of the objections duly filed.

**Same:** OBJECTIONS: WAIVER. Objections to a special assessment for
2 the cost of paving not filed within the time provided by Code sections 823-4, and not until after the hearing before the council cannot be considered, even though notice was given at the hearing that such objections would be filed

**Contracts for public improvement:** CONFORMITY WITH PRIOR PROCEED-
3 INGS. A contract entered into with the successful bidder for the construction of a public improvement must conform substantially with the terms and conditions constituting a basis for the competitive bidding; but this rule is not as generally applied where the improvement has been completed as where the right to enter into the contract is challenged at the inception of the proceedings and

before the contractor has done his work, or where there was a previous understanding with the successful bidder which was withheld from others.

**Same.** In the instant case the notice to bidders provided that the cost of the improvement should be charged to abutting property according to law, and payment in full for the work to be made in assessment certificates. The contract entered into provided that if the cost of the improvement might not lawfully be assessed against the abutting property the city would pay the same out of a special fund. *Held,* in view of the fact that no objection to the contract was made in advance of its complete performance in accordance with specifications; that the variance in the contract was of no benefit to the contractor, but rather to the city; and as it was in compliance with an ordinance protecting the city from a general liability for deficiency, and with the statute as understood by the parties, there was not such a substantial departure from the notice as to invalidate the contract.

**Same:** CONTRACTS: GUARANTY PROVISIONS. The provision in a paving contract that the contractor shall keep the improvement in repair for a series of years is not a matter of which abutting owners can complain because casting upon them a burden not authorized by the statute, as the same is essentially a guaranty of good work; and this is especially true where the objectors to the assessment in petitioning for the improvement asked that the provision be incorporated in the contract.

·**Petition for public improvement:** SIGNATURES BY AGENTS: AUTHORITY: EVIDENCE. Where the petition for a public improvement purports to have been signed in part by the duly authorized agents of abutting owners, the city council will be presumed to have satisfied itself as to the authority of such agents before adopting the resolution of necessity; and the finding of the council makes a *prima facie* case in that respect. In the instant case the evidence of want of such authority is held insufficient to overcome the *prima facie* case made by the record of the council.

**Special assessment:** BENEFITS: FRONT FOOT RULE. Where a special assessment purports to have been made according to benefits and such is the finding of the council, this finding is not impeached by the fact that the result is the same as though the assessment had been made by the front foot rule.

**Same:** BENEFITS: EVIDENCE. In the matter of an assessment for a public improvement the evidence is held to show that abutting owners received the benefits for which they are assessed.

**Special assessments:** COUNTERCLAIM FOR VALUE OF OLD IMPROVEMENT.

9    Conceding that an abutting owner has a claim against a city for the value of an old pavement constructed by special assessment, which has been removed by the city, still its value cannot be set-off against an assessment payable to the contractor for constructing a new one, as the city acts in a legislative capacity in making the assessment.

**Special assessments:** DIVERSION OF FUNDS.    A special assessment is
10    a tax levied for a special purpose and is not subject to counterclaim, set off, attachment or execution.

**Special assessment:** WAIVER OF IRREGULARITY.    Where special assessment proceedings up to the time of filing objections and the hearing thereon did not disclose a purpose to assess the abutting property in excess of the depth of one hundred and fifty feet, the irregularity in so doing was not waived by failing to make objection thereto before the council.

**Appeal:** CORRECTION OF ASSESSMENT: CONFIRMATION.    Where property
12    was illegally assessed in excess of one hundred and fifty feet, the Supreme Court on appeal, under the peculiar circumstances of the case, confirm the assessment to that extent with legal interest from the date of the original delinquency, and cancel the same as to all property in excess of one hundred and fifty feet, rather than order an entire new assessment.

*Appeal from Polk District Court.*—HON. A. H. McVEY, Judge.

SATURDAY, JANUARY 23, 1909.

THIS is an appeal in the matter of an assessment of the cost of paving against abutting property in the city of Des Moines. From the action of the city council, the plaintiff appealed to the district court, and obtained therein partial relief. From the order of the district court both parties have appealed to this court. The defendant first perfected its appeal and is designated in the record as the appellant. Thirty-one other like appeals by as many other property owners from the same action of the city council were by stipulation of parties heard and determined in the district court upon the same evidence, and are submitted

here upon the same record.  *Affirmed* on plaintiff's appeal
and *reversed* on defendant's appeal.

*W. H. Bremner, Read & Read, M. H. Cohen* and *W.
M. McLaughlin,* for appellant.

*Hager & Powell, Dudley & Coffin* and *C. L. Nourse,*
for appellee.

EVANS, C. J.—This case involves the assessment of
the cost of paving West Grand Avenue, in the city of
Des Moines, from Fourteenth Street to Twenty-Eighth
Street.  In the fall of 1903 a movement was set on foot
among the owners of property abutting on said street for
the repavement thereof.  The street was already covered
with a brick pavement, which had been laid about the year
1890, and which had become worn and defective.  Peti-
tions were circulated among the property owners for their
signature, addressed to the city council and asking for
such repavement.  These petitions were signed by a very
large majority of the property owners, including the large
majority of the plaintiffs in these pending appeals.  These
signatures were not all attached to the same paper.  For
the convenience of the persons who circulated the petitions,
five separate papers were used, and, as we understand the
record, they were placed in the hands of as many different
canvassers, each of whom presented the paper in his pos-
session to such property owners as were interviewed by
him.  In all material respects these papers were duplicates
of each other.  After obtaining the signatures of property
owners thereto, they were all presented to the city council
and left with the city clerk.  In the subsequent proceedings
they were treated by the city council as the equivalent of
a petition on the part of all the signers thereto for the
repavement of such street.  Three of these papers, which
contained a large majority of the names presented to the

city council, expressly asked for a specified asphalt pavement at the maximum cost of $2 per square yard. The other two papers asked for the repavement of the street, without making any specification of the kind of pavement desired. On February 15, 1904, the city council by roll call approved a proposed resolution of necessity for the paving of such street, and fixed March 7 as the time for final consideration thereof. This proposed resolution recited in its preamble that "the owners of the majority of the linear front feet of the property abutting" upon the street proposed to be improved had petitioned the council to repave the same, and that "a majority of the signers of said petition have indicated their preference for an asphalt pavement." Upon the final consideration of the resolution on March 7, 1904, no protests were made thereto, and the resolution was finally adopted upon roll call by a vote of six to three. Proceedings regular in form were had, which resulted in the letting of the contract on April 1, 1904.

Frequent reference to different portions of this contract will be necessary in the further discussion of this case, and we therefore set the same out at this point, as follows:

## Contract.

### For Paving West Grand Avenue

### Assessment Work.

This contract, made and entered into this 1st day of April, 1904, by and between the Barber Asphalt Paving Company, party of the first part, and the city of Des Moines, in the county of Polk, and State of Iowa, party of the second part: Witnesseth: That the said party of the first part hereby agrees to furnish at his own expense all necessary material and labor, and to construct the improvements hereinafter designated, in a thorough, substantial and workmanlike manner, and in strict compliance with the requirements of this contract and the specifications and plans hereinafter set out or referred to, or hereto attached to the satisfaction and approval of the city en-

gineer and the board of public works of the city of Des
Moines, to wit: Paving with asphalt West Grand Avenue
between the west line of West 14th Street and the east line
of West 28th Street, except that portion thereof between
a line one foot north of and parallel with the north rail
of the north street railroad track located on said street and
a line one foot south of and parallel with the south rail
of the south street railroad track there located, which ex-
cepted portions shall not be paved. The asphalt to be used
to be of the best quality of refined asphalt taken from the
Pitch Lake in the Island of Trinidad. About 22,000
square yards of asphalt paving, more or less. . . .

The party of the first part further agrees to perform
the said work in strict accordance with this contract, and
with the plans and specifications hereinbefore referred to,
at the price of $2$^{00}$/$_{100}$ per square yard, which shall be in
full compensation for the cost of the entire work, and
the city of Des Moines shall not be liable to said party
of the first part for extras of any kind or for any damage
which he may sustain by coming in contact with rock, sand,
water, or any other unforeseen obstacle or material, or by
reason of unfavorable weather, it being expressly under-
stood that the contract price above specified shall be in full
for all work done under this contract.

It is further agreed that the cost of said work shall
be assessed according to benefits against private prop-
erty fronting or abutting on the street or streets upon
which said improvements are made, and shall be payable,
within the time and in the manner provided by law and
the ordinances of the city of Des Moines, relating to the
paving and curbing of streets and alleys and the construc-
tion of sewers, and providing for the assessment and the
cost thereof against abutting property and the issuance of
assessment certificates therefor, and the party of the first
part hereby agrees to receive the assessment certificates
issued in compliance therewith, in full payment and com-
pensation for all work done and material furnished in the
performance of this contract, without recourse on the city
of Des Moines, it being expressly understood that the duty
and liability of said city of Des Moines, to the party of
the first part, or to any person claiming under him, shall
be confined to its power to impose said assessment and de-

liver the assessment certificates, to said parties of the first part, or the person or persons entitled thereto.

[Provided, however, that if any portion of the cost of said improvement may not be lawfully assessed against abutting property, such portion of such cost shall be paid by the city of Des Moines out of the city improvement fund to be created in accordance with the provisions of section 830 of the Code, but the liability of the said city for such portion of said cost shall be limited to the levy, collection and proper application of such tax and no general liability shall be created.]

Said party of the first part further agrees that the improvement herein contracted for shall be thoroughly and substantially constructed in accordance with the provisions of this contract and the specifications herein referred to, under the penalties set forth in the certain bond executed by said party of the first part, of even date herewith and hereto attached, which is expressly made a part of this contract [and to that end hereby further agrees, undertakes and guarantees that the material and workmanship employed in or upon the work shall be of such character that the pavement shall endure, without need of repairs, during a period of seven years from and after the completion thereof; and that in case any depression greater than three-eighths of one inch within the length of a four-foot straight edge occurs or any sign of disintegration appears, or any defects occur within said period, except such as are without the fault of the contractor, caused by reason of excavations in the pavement, and except such defects as arise from causes not incident to the ordinary usage of street pavements; then the contractor will, within ten days from the time of being notified of such defect, make the same good or will pay to the city of Des Moines the reasonable cost of remedying such defect. It being the intention that the party of the first part hereby guarantees that the improvement herein specified shall be and remain (except as to defects that may appear, or repairs which may be needed by reason of excavations or disturbances of the street, not caused by said party of the first part, its agents, servants, or employes), at the end of seven years from the completion thereof in as good condition in all respects as when completed and as required by the contract

and specifications embodied in said contract; and shall be and remain a good, substantial, reliable and durable pavement in material and workmanship as a whole and in all its parts except ordinary wear:  Provided, it shall be the duty of the party of the first part, or his sureties, to notify the Board of Public Works in writing to inspect said improvement within thirty days prior to the expiration of said term of seven years and until the Board of Public Works shall be so notified, the above obligation to maintain the said improvement in good condition and repair shall continue and remain in force]: Provided, further, that nothing herein contained shall be construed to release said party of the first part or his sureties from liability through consequence of any wrongful, fraudulent or negligent act of the said party of the first part, his agent or employes, in the construction of said improvements which shall not have been disclosed at the expiration of seven years above mentioned.

So far as appears in this record the improvement was completed in strict accord with the contract on June 15, 1904.  A schedule of proposed assessments was prepared by the proper officers and a notice of assessment published on July 2, 1904.  Within the time allowed by the statute the plaintiffs filed objections to the proposed assessment. After a hearing thereon by the city council on August 3d, the city council overruled such objections, and ordered the assessment in accordance with the proposed schedule.  Upon appeal to the district court the findings of the district court were adverse to the plaintiffs upon all objections save one.  That one related to a claim of credit by the plaintiffs for the value of the brick contained in the old pavement.  The lower court allowed such credit, and cancelled the assessment, and ordered a reassessment to be made for the balance due after allowing such credit.  Inasmuch as the case is triable de novo here, we will take up the questions involved as nearly as may be in their logical order, rather than to consider first the questions presented upon appellant's appeal.

I.   Before proceeding to the consideration of the merits of the case, however, it is necessary for us to determine one dispute of fàct between the parties as to the state of the record.   The objections filed by the plaintiffs before the city council were in the form of an original paper conceded to have been filed in time, and two successive amendments thereto filed at later dates.   The time for filing objections expired on July 22d.   The first amendment to the objections is known in the record as "Exhibit 6a and b."   At the time of the trial in the district court it was not found among the files and records of the city clerk, but was produced by plaintiffs' counsel.   The paper actually produced by plaintiffs' counsel contained no filing mark thereon.   It is claimed by the defendant that it should be disregarded as not having been filed; or, if filed, that there was no proper evidence that it was filed in time.   It appears from the testimony of counsel who prepared it that the paper was prepared in manifold to be used by many objectors, and that a large number of the manifold sheets were taken to the clerk's office and filed therein, and that the clerk actually did place a filing mark upon some of them.   We infer also from this testimony that counsel kept some of the forms.   This testimony of counsel is abundantly corroborated by other testimony and by the circumstances, and we are fully convinced of the truth of it.   This exhibit, therefore, will be deemed as a part of plaintiffs' objections duly filed.

*1. MUNICIPAL CORPORATIONS: special assessments: objections: evidence of filing.*

The second amendment is conceded to have been filed after the hearing before the council which occurred on August 3d.   It is claimed by counsel for plaintiffs that at the time of the hearing they notified the council that such additional objections would be filed, and that the council assented thereto.   Accepting this statement of fact, it does not meet the requirements of sections 823 and 824.   This amendment

*2. SAME: objections: waiver.*

must therefore be disregarded in the consideration of this appeal. We may .say, however, that notwithstanding this holding we have examined the objections set forth in such amendment, and find nothing in them which in our judgment would avail the plaintiffs to defeat the assessment, even though such amendment had been made in time.

II.   The first contention of plaintiff is that the contract which was entered into with the contractor for the construction of this improvement was not in accord with the specifications, nor in accordance with the bid, and that, therefore, the contract was not let in pursuance of any bid nor as the result of competitive bidding.   The part of the contract which is objected to, and which is referred to in the arguments as a "rider," is that part which we have indicated in the first brackets in the copy above set forth. The argument is that this provision is a substantial departure from the terms set forth in the specifications and notice to bidders.   Where a statute provides for competitive bidding as a condition precedent to the letting of a contract, the courts have usually been strict in requiring that the contract finally entered into with the successful bidder shall conform substantially to the terms and conditions previously laid down as the basis for the competitive bidding.   Any other rule would open the door to favoritism, and tend to destroy fair competition.   As to what constitutes a substantial conformity in a given case, there is variance in the holdings of courts.   Generally speaking, it may be said that literal conformity is not required, and that the rule of substantial conformity is applied with greater strictness in cases where the right to enter into the contract is challenged at the inception of the proceedings and before the contractor has constructed the improvement, and in those cases where there was a previous understanding with the successful bidder which was withheld from the other bidders.

3. CONTRACTS FOR PUBLIC IM-PROVEMENT: conformity with prior proceedings.

In the case at bar the notice to bidders contained this provision: "All the expense of constructing said paving to be charged to the property abutting thereon, in accordance with the law governing the same, and payment for said work to be made in assessment certificates which shall be accepted by the contractor in full payment for all work done under his contract." It is not claimed by plaintiffs that the "rider" referred to was of itself prejudicial to the abutting property owners; nor that the contractor has any occasion to resort to its provisions for the collection of his pay. Nor do they claim that if the contractor should resort to its provisions for the collection of any part of his pay, it could in any wise operate prejudicially to the abutting property owners. Their contention is that this added provision was advantageous to the contractor from his point of view at the time it was incorporated in the contract, and that it was therefore a substantial departure from the bid and rendered the contract void. There is nothing in this record that would justify a suspicion that this provision was incorporated in pursuance of any previous secret understanding. It will be noticed that the specifications called for an assessment "to be charged to the property abutting thereon in accordance with the law governing the same."

4. SAME.

The law governing the same is contained in sections 792a, and 792b, Code Supp. 1902, and in section 830, Code. These specifications incorporated the law by special reference, even though it might not have been necessary to do so. There might be some room for a difference of opinion as to the construction to be placed upon the statute above referred to. By this "rider" the parties agreed upon a construction of the statutes in advance. If the agreed construction was correct, it can furnish no ground of complaint. If incorrect, possibly a different conclusion ought to be reached. We are of the opinion that the language of the specifications as contained in the notice to bidders

contemplated full payment to the contractor, and not a partial one. Such payment was to be made in assessment certificates legally assessed. The duty of making a legal assessment was upon the defendant. If an assessment for the full cost could not lawfully be made, would the duty of the city then be at an end? The parties agreed otherwise in their construction of the statute as disclosed by the "rider." To say the least, the statute would bear the construction thus placed upon it. *Iowa Pipe Line Company v. Callanan,* 125 Iowa, 358; *Younkers v. Des Moines* (Iowa), 101 N. W. 1129.

It should be said also in this connection that there was in force at the time of such contract an ordinance of the city, enacted in 1900, which required all such contracts to contain a provision substantially similar to the "rider" complained of; the language of such ordinance being as follows: "The cost of said city improvement will be paid in assessment certificates for the amount assessed, and that the balance of said costs will be paid in warrants on the city improvement fund, payable out of the proceeds of the tax levied therefor, and the contract shall contain like provisions." In view of the fact that the contract as entered into was never objected to in advance of its performance by the contractor, and that the contract has been fully performed in accordance with the terms of the specifications themselves, and that the "rider" complained of has not in fact been of any benefit to the contractor and that it was in its essence only an attempt to agree in advance on the law, and that the provision was to some degree beneficial to the city and a compliance with its general ordinance in protecting it against a general liability for deficiency, we would not be warranted in holding that it was such a substantial departure from the specifications as to destroy the validity of the contract.

III. The plaintiffs' next contention is that they were prejudiced by a provision in the contract which bound

the contractor to guarantee the pavement and to keep the
same in repair for a period of seven years.

5. SAME: con-
tracts: guaran-
ty provisions.

The argument is that this threw upon the
abutting property owners an additional bur-
den which was not authorized by the statute. The
provisions complained of appear in the copy of the
contract which we have set out in the foregoing pages,
and we have included the same in the second pair
of brackets. These provisions furnish the plaintiffs no
just ground of complaint. They are essentially a guaranty
of a good job. They are in accord with section 814, Code
Supp. 1902. They have been heretofore approved by this
court. *Allen v. Davenport,* 107 Iowa, 91; *Osburn v. Lyon,*
104 Iowa, 160. It may be added, further, that the peti-
tions for the pavement which were presented to the city
council by the property owners contained a request that
such a provision should be incorporated in the contract
with the contractor.

IV. It is urged by the plaintiffs that the paving
resolution was not adopted by a three-fourths vote, and
that it was not petitioned for by the owners of the majority

6. PETITION FOR
PUBLIC IM-
PROVEMENT:
signatures by
agents: author-
ity: evidence.

of the linear front feet of abutting property.
There is some dispute between counsel wheth-
er the paving resolution was adopted by a
three-fourths vote, or whether by the same
vote as the resolution of necessity, namely, six to three.
The fact is not disclosed by the record except by inference.
The resolution purports to be adopted in pursuance of a
petition by the owners of a majority of the linear front
feet of the abutting property. It is claimed by the plain-
tiffs that this recital was not true in fact, and an issue
was made upon it in the trial below. The trial court found
against the plaintiffs on that issue. It is very doubtful
whether the plaintiffs fairly made this objection before the
city council. The written objection filed with the city
council on this point was that "there was no petition be-

fore the council containing the names of citizens owning
the majority of the linear front feet of abutting property."

The point made on appeal is, not that the persons
whose names appear upon the petition do not own a ma-
jority of the linear feet, but that the names appearing
upon such petition were not authorized. The proof offered
in support of this contention is indirect and weak. Some
of the names on the petition purported to be signed by
authorized agents. A husband signed for the wife. In
one instance the wife signed for the husband. A father
signed for his child. No person whose name was so signed
to the petition by another ever repudiated the act of such
alleged agent, nor did any such person appear as a witness
at the trial below to testify that the use of his name was
not authorized. Plaintiffs offered evidence in some in-
stances that certain written names appearing upon the pe-
tition were not in the handwriting of such property owner.
The Hubbell estate was the owner of nearly one thousand
one hundred linear front feet. Its name was attached to
the petition by F. M. Hubbell and F. C. Hubbell, who
constituted a majority of the trustees of the estate. It
is contended that they had no power under the trust in-
strument to sign such petition. We have examined the in-
strument, and find that general power of management with
certain specified restrictions is conferred upon a majority
of the trustees. One of the signing trustees was the
creator of the trust, and the two signing trustees are per-
haps its principal beneficiaries. We think they had power
to sign the petition. The Equitable Life Insurance Com-
pany was the owner of more than one hundred linear front
feet. Its name was signed to the petition by its president,
F. M. Hubbell. It is claimed that he had no authority
to so use the name of the company, because there was no
action by the board of directors. It is shown that Mr.
Hubbell and his son, F. C. Hubbell, own practically all
the stock of the company. The signature of the company

was attached by the president to the same paper that was signed by F. M. and F. C. Hubbell for the Hubbell estate, and presumably at the same time. There was no attempt at repudiation at any time by the board of directors. F. M. Hubbell signed also for his wife, without consulting her. She never repudiated the act. He continued to represent her in all the proceedings. These instances will suffice as illustrations of the nature of plaintiff's attack upon the sufficiency of the petition to the. city council. In our judgment, the ground of attack is not sustained. Before the petition was acted on by the city council, notice was given as required by the statute. The petition purported to be signed by duly authorized agents. The city council is presumed to have satisfied itself on that question before it passed the resolution of necessity. Its findings make a *prima facie* case in that respect. *White v. Creamery Co.,* 108 Iowa, 522; *Allen v. Portland,* 35 Or. 420 (58 Pac. 509); *Hudson v. Bayonne,* 54 N. J. Law, 293 (23 Atl. 648). The evidence introduced by plaintiffs is not sufficient to overcome such *prima facie* case. We are not holding that the facts recited above are of themselves sufficient to prove affirmatively the authority of the signatures in question, but that they strongly support the *prima facie* case in favor of the findings of the city council. The petition, therefore, must be deemed to have been signed by the requisite number of property owners, and the paving resolution is not invalid for the want of a three-fourths vote.

V. Plaintiffs contend that the assessment was made in accordance with the front-foot rule, and not in proportion to benefits. Plaintiffs offer no proof on this question. 7. SPECIAL ASSESSMENTS: benefits: front foot rule. Neither did they present this objection in writing before the city council. The assessment purports to be made in proportion to benefits, and such finding is incorporated in the resolution. This recital is not impeached by the fact that the

result is the same as under the front-foot rule.  If the general conditions and benefits applying to all the frontage are substantially the same, the result of an assessment is necessarily the same as if assessed under the front-foot rule. The law does not forbid such a result.

VI. · It is urged, however, by the plaintiffs that they received no special benefits, and testimony has been taken upon that question upon both sides.  On this question both sides have reveled in the incompetency of their testimony, though each has diligently urged the objection of the incompetency of the testimony of the other.  The testimony is necessarily opinion evidence, and it brings into the record the usual variance of such evidence.  Many of the plaintiffs were witnesses on their own behalf, and testified in substance that they got no benefit.  Many of the most important· of these witnesses were signers to the petition to the city council.  This petition asked for the very kind of a pavement which was adopted.  It also asked that the contract be not awarded at a bid exceeding $2 per square yard.  It also provided that "cost of said pavement to be assessed against the abutting property in proportion to benefits accruing thereto in accordance with the law governing the same."  The contract was awarded at $2 per square yard. In all the volume of this case no attack is made upon the fair performance of the contract.  It is a fair inference that the property owners who signed this petition believed at that time that such a pavement would benefit their property · to the extent of its cost.  Opinions may, of course, properly change.  It is quite human that they should adapt themselves to one's own interests, and that often without consciousness of wrong motive.  No good reason is shown in this case for change of opinion on the part of the signers of the petition.  Their opinion at that time was more disinterested. than at the time of the trial. Without imputing to the witnesses any conscious wrong,

8. SAME: benefits: evidence.

we dare not lean too heavily upon their present opinions. Nor would we be warranted in annulling the assessment made by the city council on this ground upon the testimony contained in this record.

VII. As already indicated in our previous statement, the street in question was already occupied by an old pavement which had been in use for about fourteen years. It is contended by the plaintiffs that the brick of the old pavement belonged to them, and that they were deprived of their property by the act of the city officers in removing such brick and converting them to the use of the city. They contend that they are entitled to have the value of such brick offset against their tax. The court below sustained this contention, and in legal effect allowed the plaintiffs an offset amounting to about one-fourth of the tax levied. The appeal of the defendant is from this part of the court's order. It is conceded in the record that the cost of the old pavement was assessed against the abutting owners, and paid by them. It appears also that they paid the cost of some repairs that were made in later years. The defendant contends that the fee of the street was in the city, and that it necessarily was the legal owner of the pavement, that the special assessment that paid for it was a tax, and that it was levied upon the property owners by legal methods, and that they acquired no ownership in the pavement by virtue of paying the tax. On behalf of the plaintiffs, it is urged that for some reasons not appearing in the record the fee of this particular street is not in the city, that in any event, its ownership is in trust, and that, when the brick in question ceased to be a part of the pavement, it had no further right thereto, but that they reverted to the abutting owners as the beneficial owners thereof. They contend, also, that the benefits for which they were liable to special assessment were only such additional benefits as accrued to them by reason of

9. SPECIAL ASSESSMENTS: counterclaim for value of old improvement.

the difference between the new pavement and the old. We are inclined to accept this last proposition urged by the plaintiffs; but the testimony fails to show that the enhanced benefits by reason of the change of pavement were not equal to the amounts assessed against them.

If we were to go further, and accept the contention of the plaintiffs that they became the owners of the old brick when they ceased to be a part of the pavement, we do not see how that fact will avail the plaintiffs to sustain the action of the lower court. A municipal corporation has a twofold character. In the one character it may undertake obligations and subject itself to liabilities for which it is answerable as any other corporation or person at the suit of the aggrieved party. In the other character it is an arm of the sovereignty of the State. Power is conferred upon it to exercise governmental functions. Out of these powers arise corresponding duties. It becomes a trustee for the public. As such trustee, it may hold title to property and enter into contracts. In the case at bar all the proceedings leading up to the levy of the tax for the pavement in question were legislative in their character so far as the city of Des Moines was concerned. It had no beneficial interest of its own as a corporation in the special assessment tax that was levied against the abutting property of the street in question. The contractor was entitled to such tax. It was the duty of the city council to exercise its legislative functions for the levy of such tax. It could not refuse to do so of its own volition, nor could it disable itself from doing so by its own wrong. If we concede the plaintiff's contention that the city of Des Moines through its proper officers wrongfully converted to its own use property which belongs to the plaintiffs, its liability for such wrongful act was quite distinct from its duty to levy the tax for the benefit of the contractor who, had performed his contract. The right of the contractor to his compensa-

tion could not be diminished by any wrongful act on the part of the city of Des Moines toward the plaintiffs.

There are other conclusive objections to plaintiff's contention. A special assessment is a tax. *Warren v. Henley,* 31 Iowa, 31; *Cassady v. Hammer,* 62 Iowa, 359; *Tuttle v. Pope,* 84 Iowa, 12; *Farwell v. Des Moines Brick Co.,* 97 Iowa, 286; *Yeomans v. Riddle,* 84 Iowa, 147; Cooley on Taxation (3d Ed.) 1153; *Sargent v. Tuttle,* 67 Conn. 162 (34 Atl. 1028, 32 L. R. A. 822). A tax is not liable to counterclaim or set-off, nor is it subject to attachment or execution. *Bailies v. Des Moines,* 127 Iowa, 124; *Sargent v. Tuttle, supra;* 1 Cooley on Taxation (3d Ed.) 20; *Finnegan v. Fernandino,* 15 Fla. 379 (21 Am. Rep. 292). We believe the authorities are uniform on this question. No authorities are cited by plaintiffs in support of their contention. Under this rule, even if the special tax in question had been levied for the benefit of the defendant city, the plaintiffs could not extinguish them by interposing against them valid counterclaims against the city. Taxes are usually levied for particular purposes, and are carried in the public treasuries in separate and particular funds. It is essential to the machinery of government that they be collected and applied to the particular purposes for which they are levied. If they may be waylaid by the creditors of the municipality and seized by attachment or execution, or if the taxpayer may set off against them his counterclaims against the municipality, then the special purposes of taxation are thwarted, the power of the government to accomplish its ends is checked, and the orderly conduct of public affairs through the machinery of government may be rendered quite impossible. Parties, therefore, who have alleged claims against the assessing municipality, must pursue their ordinary remedy in the courts by independent action. And thus must the plaintiffs in this case proceed, if they have a cause of action against

*Margin note:* 10. Special assessments: diversion of funds.

the city for the value of the brick in question. We do not
find it necessary to pass upon the validity of such claim,
and we intimate no opinion thereon. .

We do not overlook the argument of plaintiffs that
their claim is not properly a set-off, but that it enters into
and inheres in the question of amount of special benefits
received by them. This argument is based upon the as-
sumption that the assessments against their property are
greater than the enhanced benefits conferred by the new
pavement as compared with the benefits already existing
from the old pavement. This assumption is not warranted
by the record or by the state of the evidence. And, indeed,
if it were, it would not sustain the argument. To award
plaintiffs the old brick would not in any legal sense enhance
the benefits of the new pavement, nor justify a larger as-
sessment by the amount of their value. If these brick
belonged to them, either as a matter of law or of equity
they were entitled to avail themselves of such ownership
regardless of the special assessment. Even then the special
assessment could not exceed the special benefits conferred,
exclusive of the benefits already enjoyed. If the plaintiffs
were the owners of the brick, and if these were wrong-
fully taken and converted by any person, they have their
causes of action against such person, whether it be the city
or an individual. If it be the city, the rights of the
plaintiff are no different than if it had been an individual.
To determine on this appeal whether the plaintiffs owned
such brick, and whether the city wrongfully converted the
same, and, if so, what was their value, is to adjudicate a
counterclaim. · It brings into the appeal issues which do
not inhere in the special benefits arising out of the new
pavement, and which were never contemplated by the stat-
ute. The statute conferred upon the city council no power
to take cognizance of such issues. Nor can the court do
so on appeal.

VIII. Most of the abutting property is of greater

depth than one hundred and fifty feet. Under the statute assessment could be made thereon only to the extent of one hundred and fifty feet of depth. The assessment was in fact made by the city council on the whole property, regardless of depth. No complaint on this subject was made before the city council. But the assessment was made after the hearing and after the expiration of the time for filing objections. The proposed schedule of assessment was on file for twenty days before the time of hearing objections. It is urged by appellant that this schedule disclosed a proposed assessment against the entire property in each case, and that the plaintiffs waived the irregularity by failing to object thereto. If the assessment resolution was prepared in advance and attached to the schedule as a part thereof, appellant's contention in this respect would doubtless be correct. But the schedule itself, as distinguished from the formal resolution, does not disclose such purpose. The record before us does not show that the proposed assessment resolution was on file at the time of the hearing or prior thereto. The "paving assessment resolution" as finally adopted was introduced in evidence as Exhibit 7. And the schedule was attached to it, and it so appears in this record. But the record furnishes us no other information concerning it. The "assessment notice" makes no reference to the resolution. The question appears to have been passed on by the lower court.

11. Special Assessments: waiver of irregularity.

The decree of the lower court ordered reassessment to be made to the extent of one hundred and fifty feet of depth. This part of the decree was not complained of by appellant in its opening argument in support of its own appeal. In its reply to appellees, it urged that this court should cancel the assessment only as to the excess of property over one hundred and fifty feet. The question that confronts us in this situation is: Shall we sustain the action of the lower court in the cancellation of the whole assessment on

12. Appeal: correction of assessment. confirmation.

the ground that it covered more than one hundred and fifty feet, and on the ground that appellant waived the point by failing to argue, and shall we order a reassessment of the original tax on the proper dimensions of property; or shall we order the original assessment cancelled as to the excess of property only, and confirm as to the one hundred and fifty feet of each front? Were it not for the question of interest and penalties, it would be quite immaterial which course we should pursue, because either would lead to the same final result. If we should order a reassessment of the original amount, we think that legal interest should be included. In strict technicality, perhaps, we should treat the cancellation ordered by the lower court as accomplished, and we should order a reassessment of the original amount as determined by the city council together with legal interest against each property to the depth of one hundred and fifty feet. This would be a cumbrous process, serving no substantial interest to either party. In view of the peculiar circumstances of the case, we conclude to reach the proper result by the shorter and simpler course. The original assessment as made by the city council will be confirmed to the extent only of a depth of one hundred and fifty feet on each property, and cancelled as to all property in excess of such one hundred and fifty feet. The tax so confirmed shall draw legal interest as from the date of its original delinquency, but shall incur no penalties up to the present time. The defendant may at its election take a decree in this court, or have the case remanded to the lower court for a decree in accord herewith.

For the reasons stated, the decree below is *affirmed* on plaintiff's appeal, and *reversed* on defendant's appeal.